EAST DIAMOND HEAD ASSOCIATION, A PRIVATE ORGANIZATION, ET AL., *v.* ZONING BOARD OF APPEALS OF THE CITY AND COUNTY OF HONOLULU, ET AL.

No. 4952.

JANUARY 20, 1971.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ., AND CIRCUIT JUDGE KABUTAN IN PLACE OF MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal by East Diamond Head Association, hereinafter referred to as "appellant association," and seven individual appellants, comes from a trial court order on November 7, 1969, granting appellees' motion to dismiss.

In issue is this order upholding appellees' construction of Hawaii Administrative Procedure Act, § 91-14(a) (1968), to wit, that neither appellant association nor any individual appellant was a "person aggrieved" within this section which in pertinent part provides: "Any person aggrieved by a final decision and order in a contested case

\* \* \* is entitled to judicial review thereof under this chapter; \* \* \* ."

Appellant association is a private unincorporated organization consisting of individuals who own or reside upon land neighboring the subject parcel of this appeal. The individual appellants are members of the appellant association.

Their quest for judicial review stems from a zoning variance issued to appellee Hawaii Studios, Inc., a Hawaii corporation, by appellee Zoning Board of Appeals of the City and County of Honolulu, enabling the former to use said parcel as a location for movie production. For convenience, henceforth appellees shall be designated respectively, the "studio" and the "board." More of the essential facts follow:

The land in controversy, identified by Tax Map Key, First Division, 3-1-42: portion of parcel 18, has an area of 2.01 acres and is situated on the east side of Diamond Head Road, between 22nd Avenue and Paikau Street, within the Fort Ruger Military Reservation, at Kapahulu, Honolulu, Hawaii. Title is held by the State of Hawaii which by General Executive Order 1997 authorizes the State Department of Defense to use a substantial portion of the land for military purposes. A large part of parcel 18 is surplus to military needs.

The General Plan of Oahu, adopted by Ordinance No. 2443, effective May 7, 1964, designates this area for residential use.

Under Section 21-521 of the Comprehensive Zoning Code (C.Z.C.) of the City and County of Honolulu, Ordinance No. 3234, this parcel of land is within an R-3 Residential District, in which motion picture production, as engaged in by the studio, is not allowed.[1] Motion picture

---

[1] See Dalton v. City and County of Honolulu, 51 Haw. 400, 462 P.2d 199 (1969).

studios are permitted only in zoned Light and Heavy Industrial Districts as so specified in Sections 21-901 and 21-911 of the Comprehensive Zoning Code.

On March 14, 1969, the studio obtained from the Board of Land and Natural Resources of the State of Hawaii a 30 day revocable permit to use the land in question for movie production. Shortly thereafter to conduct operations, the studio constructed improvements consisting of five buildings at a cost of $175,000. A formal permit was later issued on or about May 1, 1969.

Studio was cited on June 5, 1969 by the Planning Department, City and County of Honolulu, for violation of Section 21-521, C.Z.C., for a use not permitted in an R-3 Residential District. On the same day they were also cited by the Building Department, City and County of Honolulu, for not obtaining building permits prior to erection of the aforementioned structures. Studio then filed a petition with the board requesting a variance from provision 21-521 of the C.Z.C.

Although there was no notice thereof, at the board's preliminary hearing on June 19, 1969, two individual appellants voiced objections to studio's petition. The board voted to hold a public hearing on the petition.

After publication of the required newspaper notice,[2] a public hearing was held on July 3, 1969. At this hearing and the one previously conducted, testimony was given pertaining to a rental arrangement between studio and Columbia Broadcasting System, Inc., under which Colum-

---

2 Charter of the City and County of Honolulu, Section 5-515 provides in part:

"*      *      *      *

"3. Prior to the granting of any variance the zoning board of appeals shall hold a public hearing thereon at which interested persons shall be afforded a reasonable opportunity to be heard. Notice of the time and place of the hearing shall be published at least ten days prior to such hearing in a daily newspaper of general circulation in the city."

bia Broadcasting System, Inc., was currently filming the television series "Hawaii 5-0." A studio representative in part stated that this arrangement involving the facilities in issue would last one and possibly three years.

Testifying against the variance at the public hearing were two individual appellants and members of appellant association, including its chairman. Several letters and a statement of position signed by many area residents also were submitted in opposition. Alleging the movie operation interfered with the enjoyment of their property, appellants presented evidence of an increase in noise, traffic, and congestion during day and night hours, inconvenience by electrical and telephone work crews, and a fear that studio's facilities would permanently remain and detract from the aesthetic residential character of the neighborhood.

Following the board's unfavorable ruling, all appellants instituted proceedings for a judicial review under § 91-14(a) (1968) of the Hawaii Administrative Procedure Act. The trial court, finding that appellants had not intervened in the board's proceedings, held none was entitled to review as a " * * * person aggrieved by a final decision and order in a contested case * * * " as provided for in HRS Chapter 91 and HRS § 91-14(a). We disagree with this ruling.

## I. EACH APPELLANT'S PROPERTY INTEREST AND STATUS AS A "PERSON AGGRIEVED"

Several weeks after the above mentioned ruling, we held in *Dalton* v. *City and County of Honolulu, supra* at 403, that an owner whose property adjoins land subject to rezoning has a legal interest worthy of judicial recognition should he seek redress in our courts to preserve the continued enjoyment of his realty by protecting it from

threatening neighborhood change. Each appellant here asserts just such a right.

Zoning ordinances purposefully assure a district's harmonious development as well as foster integrative growth within an area of several districts. Studio's industrial use within appellants' residential neighborhood as sanctioned by the board's zoning variance immediately and directly affects each homeowner. With this in mind how can appellees claim appellants are not "person[s] aggrieved"? Quite the contrary, they are affected the most.

Dispelling any further contention that appellants are merely tangentially touched by the zoning change here, the language of *Hattem* v. *Silver*, 19 Misc. 2d 1091, 190 N.Y.S.2d 752 (Sup. Ct. 1959), citing *Blumberg* v. *Hill*, 119 N.Y.S.2d 855 (Sup. Ct. 1953), is apposite:

> "[T]o be a 'person aggrieved' [who may attack the validity of a zoning board decision] one must be specially, personally and adversely affected as distinguished from one who is merely in the general class of a taxpayer whose only interest is to have strict enforcement of zoning regulations for the welfare of the entire community. There must be special injury or damage to one's personal or property rights as distinguished from the role of being only a champion of causes."
> At p. 1092.

Clearly, therefore, under *Hattem* and *Dalton, supra,* each appellant as a "person aggrieved" within HRS § 91-14(a) must be afforded judicial review should we find each comported with all other necessary administrative procedures at the lower level.

We turn now to the trial court's finding that no appellant "intervened" in the July 3 proceeding before the board and appellees' contention, supported by the trial court, that none was a "person aggrieved * * * in a contested case."

## II.   APPELLANTS' PARTICIPATION AT THE PUBLIC HEARING ON JULY 3, 1969

Pursuant to its rule making power under HRS § 91-2 (a) (2) (1968),[3] the board adopted a set of "Rules Relating to Administrative Procedure."[4] Rule 4, "Rules of Practice—Variance From Any Provision of the Zoning Ordinances," subsection (5), "Public Hearing," has a notice provision[5] and a requirement for the presentation of grievances which provides: "At the hearing, opportunity shall be afforded *all parties* to present evidence and argument on *all issues* involved." (Emphasis added.) In no board rule is the word "intervention," as we define that

---

[3] HRS § 91-2, "Public Information," provides in part:

"(a) In addition to other rulemaking requirements imposed by law, each agency shall:

\*         \*         \*         \*

(2) Adopt rules of practice, setting forth the nature and requirements of all formal and informal procedures available, and including a description of all forms and instructions used by the agency."

[4] Zoning Board of Appeals, Planning Department, City and County of Honolulu, "Rules Relating to Administrative Procedure" (1962, as amended through July 3, 1969).

[5] The wording of this notice provision is identical to that found in the Charter of the City and County of Honolulu, Section 5-515(3) cited in note 2, *supra*.

Interestingly, the language relating to presentation of grievances in the Charter of the City and County of Honolulu, *id.*, "interested persons" differs from that of the board's, "all parties," found in Rule 4(5) ; *see* opinion text.

In spite of HRS § 91-14(a)'s use of the word "persons," the above noted inconsistency caused the litigants here to spill much ink distinguishing between "persons" and "parties" and which was entitled to judicial review under HRS § 91-14(a).

In this case we subscribe to Professor Davis' common sense position on standing requirements:

"Complexities about standing are barriers to justice; in removing the barriers the emphasis should be on the needs of justice. One whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing because justice requires that such a party should have a chance to show that the action that hurts his interest is illegal." Davis, *The Liberalized Law of Standing*, 37 U. of Chi. L. Rev. 450 (1970) at 473.

term procedurally,[6] used or alluded to. Appellants, having comported with all board procedural dictates, could not "formally intervene" as the trial court mistakenly demanded. Manifestly, all appellants here have done everything possible to perfect an appeal.

That the public hearing was not a "contested case"[7] is without merit. *Cf. Theodore P. K. Mortensen v. Board of Trustees of the Employees' Retirement System*, 52 Haw. 212, 473 P.2d 866 (1970).

Remanded below for trial.

*Asa M. Akinaka (Padgett, Greeley, Marumoto & Akinaka of counsel)* for appellants.

*Arthur S. K. Fong (Jack H. Mizuha* with him on the brief) for appellee Hawaii Studios, Inc.

---

DISSENTING OPINION OF CIRCUIT JUDGE KABUTAN

The principal issue before this court is whether the appellee Zoning Board complied with the rules of procedure established by the Hawaii Administrative Procedures Act. The records of appellee Zoning Board clearly establish that said board complied with its procedural requirement in granting the variance. The granting of the variance was premised on the authority vested in the Zoning Board under the provisions of the Comprehensive Zoning Code, which was promulgated pursuant to the Hawaii Administrative Procedures Act. The appellants are before this court appealing from the decision of the lower court which denied them standing in their effort to collaterally attack the exercise of the discretionary power of the Zon-

---

[6] H.R.C.P. Rule 24, "Intervention."

[7] HRS § 91-1 (1968) defines "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

ing Board accorded the Board under the Comprehensive Zoning Code.

The procedural requirement in the adoption and promulgation of administrative codes or rules and regulations as defined by the Hawaii Administrative Procedures Act is only definitive and is limited to the imposition of technical procedural requirements on all administrative agencies clothed with rule-making powers which have the effect of law. The language of the appellate procedures contained in said act merely establishes general guide lines and the generality of the language therein is intended to afford the administrative agency concerned to better define and enunciate the rights and character of the "persons aggrieved" or persons who may appeal. Therefore, the definition of the term "persons aggrieved" must necessarily be determined by the Comprehensive Zoning Code. Although the Comprehensive Zoning Code does not specifically define the term "persons aggrieved," from the context of the provisions relating to the granting of variances, the lower court properly precluded the appellants' standing. To do otherwise would have subjected codes, rules and regulations of all administrative agencies to collateral attack by any taxpayer, anytime, who does not actively participate nor become a party in the administrative procedure.

For the foregoing reasons, the findings of the lower court should be affirmed.