LIFE OF THE LAND, INC., a Hawaii non-profit corporation, and CHARLES O. CARR individually and on behalf of LIFE OF THE LAND, Appellants, v. THE LAND USE COMMISSION OF THE STATE OF HAWAII, et al., Appellees

NOS. 6167 and 6168

MAY 11, 1979

RICHARDSON, C.J., OGATA and MENOR, JJ.*

OPINION OF THE COURT BY RICHARDSON, C.J.

These appeals, which were consolidated for oral argument, concern the reclassification of 320 acres in Oneula,

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

4

Oahu, and 655 acres in Ewa, Oahu, from agriculture to urban by the Land Use Commission of the State of Hawaii (hereinafter LUC).

All lands involved were owned by The Estate of James Campbell (hereinafter Campbell).

Life of the Land, a non-profit environmental corporation, and Charles Carr filed appeals to the circuit court from the LUC reclassification decisions.

Campbell filed in circuit court motions to dismiss the appeals for lack of standing and for failure to file timely appeals. The motions were granted and Life of the Land and Charles Carr "on behalf of Life of the Land" now appeal to this court from those decisions. On the appeals to this court, Charles Carr has not appealed in his own right. Hereinafter, Life of the Land is treated as the sole appellant.

We reverse.

### STATEMENT OF THE CASE

In 1974, in conformance with HRS § 205-11 (1974), LUC conducted a periodic review of the district boundary classifications of all lands throughout the state of Hawaii. Within its review LUC considered the reclassification, from agriculture to urban, of lands situated in Oneula, Oahu, and around Ewa Town, Oahu, which were owned by Campbell.

LUC held two series of informal public workshops throughout the state to discuss all proposed district boundary reclassifications. Appellant, represented by Charles Carr, participated in those workshops.

On August 30, 1974, LUC held a public meeting to propose consideration of the reclassification of lands at subsequent public hearings.

After notifying the public, public hearings were held on October 9 and 12, 1974, to discuss the reclassification of the Oneula and Ewa lands.

The Oneula proposal called for reclassification of 532 acres from agriculture to urban. Campbell planned to create a residential, marina community which would contain 4,600

new homes, a 500-boat public marina and support a population of 30,000 by 1990. This proposal was one phase of a larger project involving approximately 1,030 acres.

The Ewa proposal called for reclassification of 862 acres from agriculture to urban. Campbell planned to create a new city involving 4,560 acres. This proposal was one phase of a larger project which would eventually encompass 12,000 acres and support thousands of people.

Charles Carr, representing appellant, did not testify at the Oneula public hearings because the October 9, 1974, hearing was disrupted by heated arguments from the audience, and therefore he did not have an opportunity to testify at that hearing. It is unclear whether or not he attempted to testify at a subsequent hearing on October 12, 1974. However, he had previously been assured by the chairman of the LUC that his written comments, objecting to the procedures followed by the LUC and questioning the environmental impact of the proposed actions, would be applied to every docket subject to the boundary review.

Charles Carr did read a prepared statement at the legislative portion of the October 12, 1974, Ewa public hearing.

On December 20, 1974, LUC held an action meeting and announced that the Oneula and Ewa lands would be reclassified from agriculture to urban.

On April 22, 1975, the Decision and Order reclassifying 320 acres of Oneula property to urban along with Findings of Fact and Conclusions of Law was signed by the chairman of the LUC. Appellant received a copy of the decision on April 29, 1975.

On May 21, 1975, the Decision and Order reclassifying 655 acres of Ewa property to urban was signed and a copy received by appellant on June 5, 1975.

On May 28, 1975, appellant filed an appeal from the Oneula decision to the circuit court.

On July 3, 1975, appellant filed an appeal from the Ewa decision.

6

On July 8, 1975, Campbell filed in the circuit court a motion to dismiss the Oneula appeal for lack of standing and a failure to file a timely appeal.

On August 19, 1975, Campbell filed a similar motion from the Ewa appeal.

Both motions were heard on September 4 and October 1, 1975.

The judgments granting the Oneula motion were filed on October 31 and November 3, 1975, and the judgments granting the Ewa motion were filed on October 31 and November 5, 1975.

On February 20, 1976, appellant appealed to this court from the October 31 decisions.

## ISSUES

1. Whether appellant had standing to sue under HRS § 91-14(a) (1975).

2. Whether appellant's appeals to the circuit court from the LUC decisions were timely under HRS § 91-14(b) (1975).

## I. WHETHER APPELLANT HAD STANDING TO SUE UNDER HRS § 91-14(a) (1975).

Standing has two basic requirements: first, one must be a person aggrieved and second, the aggrieved party must have participated in a contested case. Both requirements are discussed below.

Hawaii's Administrative Procedure Act, HRS § 91-14(a) (1975) states, "Any person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review. . . ."

In *East Diamond Head Ass'n v. Zoning Board of Appeals*, 52 Haw. 518, 523, n. 5, 479 P.2d 796, 799 (1971) this court noted, "One whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing. . . ."

*In Re Application of Hawaiian Electric Co.*, 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975), was an appeal involving Life of the Land, at least two of whose members had testified that they had been subjected to higher utility rates through agency action. This court adopted the definition of an aggrieved party as one "whose personal or property right has been injuriously or adversely affected by an agency's action." This court stated that one who has to pay higher utility rates due to agency action is a person specially, personally and adversely affected.

*Waianae Model Neighborhood Area Ass'n v. City and County of Honolulu*, 55 Haw. 40, 514 P.2d 861 (1973) concerned a building permit for Makaha Beach Apartment Hotel. Plaintiff in that case alleged that the application for the building permit did not qualify for an exemption from the Comprehensive Zoning Code and sought to have the permit revoked.

Plaintiff was organized to improve the quality of the environment and living conditions within the community in which its members lived or owned property. This court found that Plaintiff had standing in its own right to challenge the building permit.

In *East Diamond Head Ass'n v. Zoning Board of Appeals*, *supra*, appellants were owners of homes located adjacent to property which received a zoning variance for industrial use. This court stated:

> [T]o be a "person aggrieved" [who may attack the validity of a zoning board decision] one must be specially, personally and adversely affected as distinguished from one who is merely in the general class of a taxpayer whose only interest is to have strict enforcement of zoning regulations for the welfare of the entire community. There must be special injury or damage to one's personal or property rights as distinguished from the role of being only a champion of causes.

52 Haw. at 522, 479 P.2d at 798.

This court noted that each homeowner was immediately and directly affected and were persons aggrieved.

*Dalton v. City and County of Honolulu*, 51 Haw. 400, 403, 462 P.2d 199, 202 (1969) involved proposed high-rise apartment buildings. Plaintiffs lived across the street from the site and this court allowed standing because the apartments would restrict the scenic view, limit the sense of open space and greatly increase the population of the surroundings, thereby creating in plaintiffs a " 'concrete interest' in a 'legal relation.' "

As illustrated by the above cases, this court has in recent years recognized the importance of aesthetic and environmental interests and has allowed those who show aesthetic and environmental injury standing to sue where their aesthetic and environmental interests are "personal" and "special", or where a property interest is also affected.

Appellant alleges that it is a person aggrieved within the meaning of HRS § 91-14(a) (1975) since its members have allegedly suffered substantial personal harm as a result of the LUC decisions.

Appellant has made a prima facie showing that three of its members reside in the immediate vicinity of the Oneula lands, two of whom own their residences, and that the same members live approximately one and one-half to two miles from the Ewa lands. In addition, it is generally contended that members use the area for diving, swimming, hiking, camping, sightseeing, horseback riding, exploring and hunting and for aesthetic, conservational, occupational, professional and academic pursuits, and that future urbanization will destroy beaches and open space now enjoyed by members and decrease agricultural land presently used for the production of needed food supplies. Appellant contends that construction will have an adverse effect on its members and on the environment, and that pursuits presently enjoyed will be irrevocably lost.

We hold that, given the important fact that some of appellant's members live in the area adjoining the reclassified properties, appellant's allegations are sufficient to establish appellant as a party specially, personally and adversely affected by the agency's action.

The second question is whether appellant participated in a contested case. HRS § 91-1(5) (1975) defines a contested case as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

*City and County of Honolulu v. P.U.C.*, 53 Haw. 431, 433, 495 P.2d 1180, 1182 (1972) and *In Re Hawaiian Electric Co.*, supra, 56 Haw. at 265, 535 P.2d at 1106, both require participation in a contested case as the other prerequisite for standing.

In *City and County of Honolulu*, appellant failed to intervene as a party, failed to receive permission to participate and failed to participate in the agency hearing. This court stated that HRS § 91-14(a) (1975) "is clear and unambiguous that the person aggrieved must have been involved in the contested case before the PUC." Since appellant in that case was not involved in a contested case, this court did not allow appellant standing.

*In Re Hawaiian Electric Co.* involved testimony by appellant at the public hearing. This court declared:

> We hold, therefore, that where the appellants have been "aggrieved" by the action of the PUC, and where they were involved as "participants" during the agency hearings . . . the appellants may challenge the order of the PUC in this court.

According to the standards set out in the above two cases, appellant's actions generally constitute sufficient participation in a contested case before the LUC to fulfill the second requirement of standing.

But the LUC further contends that appellant had to testify at the "judicial" portion of the LUC hearings in order to have participated in a contested case. The public hearings in the instant cases were divided by the LUC into a "judicial" and a "legislative" portion.

In the Oneula case, appellant was represented by Charles Carr at the public hearings and although due to hearing disruptions he did not actually testify, he had been assured by the LUC chairman that his written comments, opposing the

10

entire boundary review as being in violation of Hawaii's Administrative Procedure Act and Hawaii's environmental laws, would be applied to all dockets under review. Therefore we find that his written comments should be given the same effect as his oral testimony would have had.

In the Ewa case, Charles Carr read a statement at the legislative portion of the October 12, 1974, public hearing.

LUC concedes that it would not have allowed appellant to appear at the judicial portion, apparently because LUC takes the position that only persons with a direct property interest in the subject area have the right to appear in the judicial portion.

We hold that, given the LUC's restrictions on access to the judicial portion of its hearings, appellant should not be penalized for failing to participate in the judicial portion. Therefore we hold that in each of these cases appellant's participation amounted to participation in a contested case.

Accordingly, we find that in each of these cases appellant was an aggrieved party who participated in a contested case.

II. WHETHER APPELLANT'S APPEALS TO THE CIRCUIT COURT FROM THE LUC DECISIONS WERE TIMELY UNDER HRS § 91-14(b) (1975).

HRS § 91-14(b) (1975) states:

Except as otherwise provided herein, proceedings for review shall be instituted in the circuit court within thirty days after the preliminary ruling *or within thirty days after service of the certified copy of the final decision and order of the agency.* . . . (Emphasis provided).

The April 22, 1975, Oneula Decision and Order of the LUC was received by appellant on April 29, 1975, presumptively having been mailed by the LUC on April 28, 1975. Appellant's notice of appeal to the circuit court was filed on May 28, 1975.

The May 21, 1975, Ewa decision was received by appellant on June 5, 1975, presumptively having been mailed by the

LUC on June 4, 1975. Appellant's notice of appeal was filed on July 3, 1975.

Both appeals were filed within thirty days after service of the LUC decisions as provided by HRS § 91-14(b) (1975).

We find appellant's appeals timely.

For the above reasons, we reverse the circuit court's judgments granting the motions to dismiss, and remand these cases to the circuit court for further proceedings consistent with this opinion.

*Edward Cooper Brown* and *Scott R. Nakagawa* for appellant Life of the Land.

*Benjamin M. Matsubara*, Special Deputy Attorney General *(Ronald Y. Amemiya*, Attorney General) for appellee Land Use Commission.

*Cuyler E. Shaw (Ashford & Wriston* of counsel) for appellee Estate of James Campbell.