SAMSON MAHUIKI, BERNIE MAHUIKI, WILLIAM U. ASING, PATSY L. ASING, JOHN BERGHOLZ, FRANCES E. CHANDLER, NAOTOSHI MIKASA, GEORGE MIKASA, PHILIP F. BARBER, MARJORY F. BARBER, WILLIAM W. NELSEN, CAROLINE NELSEN, MARJORY YOKOTAKE, MICHAEL OLANOLAN, JANET OLANOLAN, NORTH SHORE OHANA, Plaintiffs-Appellants, *v.* PLANNING COMMISSION and PLANNING DEPARTMENT OF THE COUNTY OF KAUAI and ALEX FERREIRA, Defendants-Appellees

NO. 7694

(CIVIL NO. 2048)

DECEMBER 6, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT AND HAYASHI, JJ.

## OPINION OF THE COURT BY NAKAMURA, J.

Several Kauai landowners and residents appeal from a dismissal of their request for judicial review of the County of Kauai Planning Commission's approval of Dr. Alex Ferreira's applications for permits to develop a parcel of land in Haena, Kauai, including a special management area use permit required under the Coastal Zone Management Act, HRS Chapter 205A (CZMA or the Act). The dispositive questions are related to the appellants' standing to seek review of the administrative action and the administrative agency's compliance with the CZMA and the rules and regulations issued in furtherance of the Act. Since at least two of the appellants possessed the requisite standing, and the agency disregarded statutory mandates in issuing the use permit, we reverse the circuit court and remand the case for proceedings consistent with this opinion.

### I.

The real property involved in this controversy consists of approximately 5.277 acres of undeveloped land subject to use regulation under the CZMA and situated at Haena, Kauai, for which Haena, Ltd., a California limited partnership, sought permission from the Planning Commission to develop as a combined condominium apartment and single-family residence project consisting of seventeen condominium units and four single-family dwellings. On August 2, 1978, consolidated applications for a project development permit and a zoning permit, as required by the County of Kauai's Comprehensive Zoning Ordinance (the CZO),[1] and for a special management area use permit, as required by the County's Environmental Shoreline Protection Rules and Regulations adopted pursuant to and in furtherance of the CZMA, were filed on behalf of the limited partnership by Dr. Ferreira, its general partner. The Planning Commission scheduled a public hearing on the applications for September 27, 1978, and caused notices to be published in the Honolulu Star-Bulletin and the Garden Island on September 6,

---

[1] In view of our decision that the Planning Commission's action contravened procedural mandates related to the CZMA, we do not reach appellants' contentions that the action also violated the CZO.

1978.[2] Dr. Ferreira also notified at least two-thirds of the owners and lessees of property adjoining or within three hundred feet of the project site by mail that a hearing on his applications had been set. The published notices expressly informed interested parties that their "[t]estimonies for or against the proposed development should be filed in writing ... before the date of the public hearing or presented in person at the time of the public hearing." *See* note 2 *supra.*

Objections to the development, largely related to adverse environmental consequences, were voiced by several persons during the course of the hearing. Eight letters received by the Commission in response to the notices, including one from Mr. and Mrs. Philip F. Barber, reflecting similar concerns were also made part of the record of the hearing. Several members of the Planning Commission likewise expressed misgivings about the plan to construct condominium units in the particular area. The Commission, however, did not render an immediate decision on the applications for the three permits.

The development proposal was on the Planning Commission's agenda for October 11, 1978, but further action thereon was deferred, pending an evaluation and recommendation by the Planning Director. His views on the project were presented to the Commission

---

[2] The published notices stated:
  NOTICE IS HEREBY GIVEN of a public hearing to be held by the County of Kauai Planning Commission at the County Building (Council Chambers) on Wednesday, September 27, 1978, at 1:30 p.m. or soon thereafter to consider, under provisions of the County of Kauai Environmental Shoreline Protection Rules and Regulations, a SPECIAL MANAGEMENT AREA USE PERMIT; simultaneously, under provisions of Ordinance No. 164 (CZO), as amended, a PROJECT DEVELOPMENT USE PERMIT and a CLASS IV ZONING PERMIT to develop 17 condominium units and 4 single-family residences utilizing 27 parking stalls on property located mauka of Lae o Kaonohi Point, on the makai side of the Government Road in Wainiha-Haena, approximately 200 feet East of Camp Naue and 400 feet makai of Kuhio Highway. It is further identified as Tax Map Key: 5-8-09:26 and contains an overall area of 229,866 square feet, or approximately 5.277 acres.
  Map showing the proposed development is on file in the office of the Planning Department at Lihue and is open to the public for inspection during office hours.
  Testimonies for or against the proposed development should be filed in writing to said Commission before the date of the public hearing or presented in person at the time of the public hearing.

on October 25, 1978. His qualified endorsement of the proposal was "based on Dr. Ferreira's agreement to revise the development concept to have duplex type buildings, centralized parking, and amenities to be built by the individual owners." In assessing the project for purposes of the special management area use permit, the Director noted the "proposed development consists of some alterations to existing land forms and vegetation" and the density of use would have an impact on the "scenic and environmental character of the area."[3] And his conclusions in this regard were expressed as follows:

> Based on the foregoing findings and evaluation, it is concluded that for the SMA Use Permit, *in itself,* the subject project (with certain modifications) could meet the criteria for the granting of a Special Management Area Use Permit. It is also concluded that the cumulative impact of *such* individual developments could, however, be substantial enough to adversely affect the environmental character of Haena. The density of development and the nature of use (visitor oriented/resort residential function) are the main factors that are judged to cause the more significant effects to the environment of Haena. In view of the time limit constraints imposed on the Authority to act on this application, it would be prudent to discuss these areas of concern with the applicant prior to the action, or if time is not allowed to discuss these concerns, to impose conditions if to be approved.

---

[3] The evaluation, in relevant part, read:

The proposed development consists of some alterations to existing land forms and vegetation, and, in our opinion, due to the density of use will cause some impact to the scenic and environmental character of the area. Consideration must be given to the height and bulk of buildings in proximity to the shoreline. In this case, all proposed structures are to be one story with gable style roofs.

and

In itself, this development, with certain modifications, may not create *substantial* adverse environmental impact to the character of Haena. The cumulative impact of *such* individual developments could, however, be substantial enough to adversely affect the environmental character of Haena. This cumulative impact could be lessened if (1) the property owners, on their own initiative, do not build to the maximum density allowed, and utilize the dwelling units primarily for permanent residences, or beach-type homes that are not commercial or resort type in nature; or (2) the area could be rezoned to a lower density use such as that originally recommended in the North Shore Development Plan report.

Several commissioners, including the chairman, nevertheless reiterated their qualms about permitting the development. But the Commission's decision was to grant the developer the necessary permits, subject to several conditions. The application for the special management area use permit was approved on condition that

(a) the applicant modify the nature of development to that represented by the applicant at the Commission's meeting of October 25, 1978. The development scheme is to provide, for the West half of the parcel, 7 lots to accommodate 5 detached dwelling units for 5 lots and one (1) duplex unit each for the remaining two lots; and the remaining half of the parcel to the East is to be developed into 6 separate lots to accommodate (1) duplex unit per lot. The applicant shall submit a development plan to illustrate definitively the lot arrangements and configurations, the siting of buildings or building envelope per lot, the parking areas, landscaping, etc. Such plan shall be approved by the Planning Commission and shall be adhered to in the development of the parcel.

(b) the SMA permit be further subject to all of the conditions to be imposed with the approval of the Zoning and Project Development Use Permits.

The Planning Commission, however, made no finding that the development would "not have any substantial adverse environmental or ecological effect" or that the adverse effect was "clearly outweighed by public health and safety" prior to the approval.[4]

---

[4] When Dr. Ferreira's application for a special management area use permit was approved, the Planning Commission as the "authority" charged with the responsibility of enforcing the policy of the CZMA on Kauai was subject to the strictures of HRS § 205A-26, which in relevant part provided that

No development shall be approved unless the authority has first found:

(A) That the development will not have any substantial adverse environmental or ecological effect, except as such adverse effect is clearly outweighed by public health and safety. Such adverse effects shall include, but not be limited to, the potential cumulative impact of individual developments, each one of which taken in itself might not have a substantial adverse effect and the elimination of planning options; and

(B) That the development is consistent with the findings and policies set forth in this part.

HRS § 205A-26(2)(A).

The foregoing restrictions were also reflected in Section 4(B), Rules and Regulations Relating to Environmental Shoreline Protection of the County of Kauai.

Appellants filed their Notice of Appeal in the Circuit Court of the Fifth Circuit on November 22, 1978, challenging the Planning Commission's approval of the permits sought by Dr. Ferreira on numerous grounds. While the notice was ostensibly an appeal from a decision rendered by an administrative agency filed pursuant to HRS § 91-14, the appellants also averred the circuit court's jurisdiction was being invoked under HRS §§ 205A-6 and 603-21.5.[5]

In December of 1978, Dr. Ferreira submitted "a development plan to illustrate definitively the lot arrangements and configurations, the siting of buildings . . . etc.," as stipulated in the Planning Commission's decision. Appellants sought to enjoin the Commission's consideration of the building design and site plans, but the circuit court denied a preliminary injunction and dissolved the temporary restraining order it had entered earlier. At the instance of the appellees, the appeal to the circuit court was subsequently dismissed on the ground that appellants had not participated in the administrative proceedings. Summary judgment was also entered in appellees' favor on the basis of the purported failure of appellants to exhaust their administrative remedies. A timely appeal to this court followed.

## II.

In considering the preliminary question posed for decision, we initially note that where the interests at stake are in the realm of environmental concerns "we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements." *Life of the Land v. Land Use Commission,* 63 Haw. 166, 171, 623 P.2d 431, 438 (1981). "[O]ur basic position has been that standing requirements should not be barriers to justice," *id.* at 174, 623 P.2d at 439, and we have endorsed the view that "[o]ne whose legitimate interest is in fact injured by illegal action of an agency or officer should have standing because justice requires

---

[5] Our conclusions that at least two of the appellants had standing to appeal from the agency determination and that the agency breached provisions of the CZMA render it unnecessary for us to discuss the applicability of HRS § 205A-6 in the present situation.

that such a party should have a chance to show that the action that hurts his interest is illegal." *East Diamond Head Association v. Zoning Board of Appeals,* 52 Haw. 518, 523 n.5, 479 P.2d 796, 799 n.5 (1971) (quoting Davis, *The Liberalized Law of Standing,* 37 U. Chi. L. Rev. 450, 473 (1970)). *See also Life of the Land v. Land Use Commission, supra,* 63 Haw. at 176, 623 P.2d at 441.

### A.

Having set forth these guiding tenets, we examine the circumstances involved in the light of the statute governing appeals from administrative rulings to determine whether appellants, or any of them, were entitled to request a review of the agency determination.

HRS § 91-14(a) allows any person "aggrieved by a final decision and order in a contested case" to invoke judicial review pursuant to the Administrative Procedure Act.[6] Thus the pertinent inquiry at the outset is whether there was a final decision and order in a contested case from which an appeal could have been taken. That the proceeding before the Planning Commission was a contested case is obvious; it was one in which Dr. Ferreira sought to have the legal rights, duties, or privileges of Haena, Ltd. relative to the development of land in which it held an interest declared over the objections of other landowners and residents of Haena.[7] *See Town v. Land Use Commission,* 55 Haw. 538, 548, 524 P.2d 84, 91 (1974). Moreover, we recently confirmed that an "SMA (special management area) use permit application proceeding was a 'contested case' within the meaning of HRS Chapter 91." *Chang v. Planning Commission,* 64 Haw. 431, 436, 643 P.2d 55, 60 (1982). That the

---

[6] HRS § 91-14(a) provides:

*Judicial review of contested cases.* (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.

[7] HRS § 91-1(5) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

action taken by the Planning Commission on October 25, 1978 represented a final decision is not so clear.

The grant of the SMA use permit, as we have seen, was subject to several conditions, and the matter was on the agendas of subsequent Commission meetings. Still, none of the parties even suggests the action taken on October 25, 1978 was not a final decision. The Commission viewed the subsequent discussions of the permit as a "consideration of a condition attached to the original approval . . . [which was] not by any means a reconsideration or a substantial deterrance [sic] from the original approval."[8] And Dr. Ferreira's position that appellants lacked standing to appeal because they did not participate in the crucial agency proceeding necessarily assumes there was a final decision prior to February 28, 1979 when most of the appellants appeared before the Commission. We therefore experience no difficulty in concluding the appeal was from a final decision in a contested case.

B.

But appellants must still demonstrate their interests were injured and they were involved in the administrative proceeding that culmi-

---

[8] The following excerpts from the minutes of the Commission's meeting of February 28, 1979 substantiate its treatment of the decision of October 25, 1978 as a final decision and order:

Mr. Doi [the chairman] requested clarification from either the Director or legal counsel exactly what is the matter before us today — are we here to approve the subject permits, or to review a condition of an application that has be[en] previously approved.

Deputy Attorney Belles stated the only action that is going to be taken today is to review the design proposal submitted by the applicant. This is a condition attached to the original approval that was granted by the Planning Commission in October of last year.

.  .  .  .  .

Mr. Doi requested that legal counsel summarize the proceedings today; what are we exactly deliberating on and what would be the effect of the Commission's decision.

Deputy Attorney Belles reiterated the deliberations today before the Planning Commission are solely to consider the various design proposals by the applicant, and for no other purpose.

Mr. Doi concluded the discussion should be confined not to whether the development proposal is appropriate for the area, but whether the design that is being proposed is satisfactory or not.

nated in the unfavorable decision. *Life of the Land, Inc. v. Land Use Commission,* 61 Haw. 3, 6, 594 P.2d 1079, 1081 (1979); *In re Application of Hawaiian Electric Co.,* 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975).

The interests appellants sought to protect are essentially aesthetic and environmental in character. We have "recognized the importance of . . . [these] interests and . . . allowed those who show aesthetic and environmental injury standing to sue where their . . . interests are 'personal' and 'special', or where a property interest is also affected." *Life of the Land, Inc. v. Land Use Commission, supra,* 61 Haw. at 8, 594 P.2d at 1082. The interests asserted by appellants were "special" and "personal" unto themselves as they are adjacent landowners or residents of Haena. And a decision to permit the construction of multi-family housing units on undeveloped land in the special management area could only have an adverse effect on their environment.

· Yet it is not enough that appellants were "specially, personally and adversely affected by the agency's action," *id.,* for "this court has added a further gloss to the standing issue as regards administrative proceedings." *In re Application of Hawaiian Electric Co., supra,* 56 Haw. at 264, 535 P.2d at 1105. We have also required "that the person aggrieved must have been *involved* in the contested case." *Id.* We have not, however, conditioned standing to appeal from an administrative decision "upon formal intervention in the agency proceeding." *Jordan v. Hamada,* 62 Haw. 444, 449, 616 P.2d 1368, .1371 (1980). "Participation in a hearing as an adversary . . . has been held sufficient to give rise to appeal rights," *id.* at 449, 616 P.2d at 1372 (footnote omitted), and "a public hearing, conducted pursuant to public notice," has been deemed "a 'contested case' within the meaning of HRS § 91-1." *In re Application of Hawaiian Electric Co., supra,* 56 Haw. at 264, 535 P.2d at 1105. *See also East Diamond Head Association v. Zoning Board of Appeals, supra,* 52 Haw. at 524, 479 P.2d at 799.

Here, the Planning Commission gave notice of the hearing scheduled for September 27, 1978, and further directed that "[t]estimonies for or against the proposed development should be filed in writing to said Commission before the date of the public hearing or presented in person at the time of the public hearing." *See* note 2 *supra.* Among those filing their "[t]estimonies . . . against the proposed development . . . in writing" in conformity with the pub-

lished notices were adjacent landowners Philip F. Barber and Mar-
jory F. Barber, two of the appellants; their letter was among the
letters "received for the record."[9] A denial of appeal rights to Mr.
and Mrs. Barber under these circumstances would hardly be con-
sonant with our stated disinclination "to foreclose challenges to
administrative determinations through restrictive applications of
standing requirements." *Life of the Land v. Land Use Commission,*
*supra,* 63 Haw. at 171, 623 P.2d at 438. For they "contested the issue
[of whether the permits should be granted] before the agency" in a
manner suggested by the Planning Commission, and thereby satis-
fied the requirement of "adversary participation". *In re Application*
*of Hawaiian Electric Co., supra,* 56 Haw. at 264, 535 P.2d at 1105.

### III.

Since the standing of Philip F. Barber and Marjory F. Barber to
invoke judicial review is evident, we consider the question relating to
the Planning Commission's compliance with the directives of the
Coastal Zone Management Act. Appellants charge here that the
Commission was derelict in this regard because it failed to make a
specific finding that the proposed development would "not have any
substantial adverse environmental or ecological effect, except as
such adverse effect is clearly outweighed by public health and safety"
before approving the SMA use permit application. HRS § 205A-
26(2)(A) (1976);[10] Section 4(B), Rules and Regulations Relating to

---

[9] The minutes of the hearing conducted on September 27, 1978 contain the
following reference to letters received by the Commission in response to the pub-
lished notices:

The Commission received for the record letters opposing the proposed
condominium project from the following:
(9/14/78) Peter Frolking
(9/14/78) Karen Ram
(9/16/78) Mr. & Mrs. Philip F. Barber
(No date) Francelia K. Veech
(9/18/78) Eric & Kimberly Thruelson
(9/22/78) Charles Forward
(9/22/78) Fred R. Frizelle, Jr. & Glenn Frizelle
(9/24/78) Richard K. Rice

[10] *See* note 4 *supra;* for the text of the applicable portion of HRS § 205A-26(2)(A) as
it read prior to the amendment of the section in 1979.

Although the section has been amended, it still calls for a finding that the

Environmental Shoreline Protection of the County of Kauai. We would have to agree.

A.

Legislative concern about Hawaii's shoreline environment and resources antedates the enactment of the CZMA, as specific provisions covering the "shoreline area" and "shoreline setbacks" have been part of the Land Use Law since 1970. *See* S.L.H. 1970, c. 136; HRS §§ 205-31 to 205-37. But the enactment by Congress of the Coastal Zone Management Act of 1972, Pub. L. No. 89-454, as added by Pub. L. No. 92-583, 86 Stat. 1280 (codified as amended at 16 U.S.C. §§ 1451 to 1464 (1976)), fostered the adoption of a comprehensive State regulatory scheme to protect the environment and resources of our shoreline areas. The system of management favored by the legislature is embodied in HRS Chapter 205A, and the declared State policy is "to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii." HRS § 205A-21.[11]

The implementation of this policy has been delegated in large part to the counties, and they are responsible for the administration of the special management area use permit procedure and requirements. State primacy nevertheless has been retained as HRS §§ 205A-4 and 205A-28 make clear,[12] and the legislature has sought to

---

proposed development "will not have any substantial adverse environmental or ecological effect." But now the development may be approved if the "adverse effect is minimized to the extent practicable" and it is "clearly outweighed by public health, safety, or compelling public interest." *See* S.L.H. 1979, c. 200, § 9.

[11] HRS § 205A-21 reads:

*Findings and purposes.* The legislature finds that, special controls on developments within an area along the shoreline are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure that adequate access, by dedication or other means, to public owned or used beaches, recreation areas, and natural reserves is provided. The legislature finds and declares that it is the State policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaii.

[12] In 1978, HRS § 205A-4 read:

*Implementation of objectives, policies, and guidelines.* (a) In implementing the objectives of the coastal zone management program full consideration shall be

maintain the integrity of its declared policy by providing guidelines in HRS § 205A-26 to be followed by the counties in reviewing applications for SMA use permits. And when the Planning Commission considered Dr. Ferreira's application, its exercise of authority was subject to these explicit restraints:

No development shall be approved unless the authority has first found:

(A) That the development will not have any substantial adverse environmental or ecological effect, except as such adverse effect is clearly outweighed by public health and safety. Such adverse effects shall include, but not be limited to, the potential cumulative impact of individual developments, each one of which taken in itself might not have a substantial adverse effect and the elimination of planning options; and

(B) That the development is consistent with the findings and policies set forth in this part.

HRS § 205-26(2)(A) (1976).

---

given to ecological, cultural, historic, and esthetic values as well as to needs for economic development.

(b) The objectives and policies of this chapter and the guidelines enacted by the legislature shall be binding upon actions within the coastal zone management area by all agencies.

and "agency" was defined by § 205A-1(1) to mean "any agency, board, commission, department, or officer of a county government or the State government."

Section 205A-4(b) was amended in 1979 to read:

(b) The objectives and policies of this chapter and any guidelines enacted by the legislature shall be binding upon actions within the coastal zone management area by all agencies.

and the definition of "agency" in HRS § 205A-1(1) now reads:

(1) 'Agency' means any agency, board, commission, department, or officer of a county government or the state government, including the authority as defined in part II.

Prior to its amendment in 1979, HRS § 205A-28 read:

*Permit required for development or structure.* No development or structure shall be constructed in any county within the coastal zone special management area, as designated on maps prepared by the county planning department, without obtaining a permit in accordance with this part.

It now reads:

*Permit required for development.* No development shall be allowed in any county within the special management area without obtaining a permit in accordance with this part.

B.

We have combed the record in vain for findings by the Commission that the development proposed by Dr. Ferreira would have no "substantial adverse environmental or ecological effect" or the adverse effect would be "clearly outweighed by public health and safety" and the development was "consistent with the findings and policies set forth" in HRS Chapter 205A. We discover instead serious misgivings on the part of commission members about the proposal's compatibility with a policy to preserve and protect the environment and resources of the coastal zone. Furthermore, their misapprehensions regarding the relationship of county zoning ordinances and the CZMA are patent.

The recorded statements of the chairman and two other members reflect views that the Commission's options regarding the SMA use permit application had been preempted by a prior zoning decision that rezoned the land in question from an R-2 to R-4 zone and thereby designated it for higher development than single-family residential use.[13] The legislative mandate, however, was that the objectives and policies of the CZMA and its guidelines were to be paramount in any determination involving the use of land in a

---

[13] The statement of the Chairman recorded in the minutes of the Commission's meeting of October 25, 1978 reads:

'I, too, feel that I'm voting for this project with reservations. But looking at it from a positive point of view, where can we proceed from this point on and this may not be germane to the application today, but I think if we truly believe in the preservation of that area, that we should examine ways and means to initiate downzoning action for the remainder of the area that we are speaking of. So without repeating what's already been said, I will vote for this application but with reservations.'

The statement of Commission Member Fujita reads:

'Unfortunately this is one of those decisions where there's really no solutions to the problems. Way back we probably had intelligent choices but the choice was already made when it was upzoned to R-4. For the future, however, when we have cases where there is a definite error, if the zoning is wrong, if it takes Commission initiative to require a change, I think we should have the guts to do it. We should begin to investigate this area. I have reservations on this particular project but it meets all the rules and regulations. We've had many comments, pros and cons on this application. I hate to see an area as beautiful as Haena being slowly eroded and destroyed. I have deep reservations, but I'm going to have to go with staff's recommendation. But for future zoning applications, if we find an error in

special management area. See HRS §§ 205A-4 and 205A-28; *see also*
D. Mandelker, *Environmental and Land Controls Legislation* 317-18
(1976).[14] As the Commission's approval of the application for an
SMA use permit breached this command, the grant of the permit
cannot stand.

The order of dismissal and the summary judgment entered by
the circuit court are vacated, and the case is remanded for proceed-
ings consistent with this opinion.

*E. Courtney Kahr* for plaintiffs-appellants.

*Boyce R. Brown, Jr. (E. Cooper Brown* with him on the brief; *Brown
& Bettencourt,* of counsel) for defendant-appellee Ferreira.

*Max W. Graham, Jr. (Michael J. Belles* on the brief), Deputy County
Attorneys, for defendants-appellees Planning ·Commission, et al.

---

zoning, I think this Commission should take it upon its shoulders to initiate action
— either change it, or at least start something.'

The statement of Commission Member Tehada, in pertinent part, reads:

'Unfortunately, and this is the saddest part, our ordinance permits the use of
catering to short-term visitors in the residential district. In the sensitive environ-
ment of Haena, this function, which is more of a resort type use, is highly out of
character and I portend that in the long run, highly detrimental. I am sure that the
past decision-makers, in their deliberation and subsequent decision to upzone the
land, did not intend that it eventually be used as a resort/visitor destination area.'

[14] The author's observation in this regard is as follows:

Permits required under this act supersede all others, including any permits
required from state agencies such as the Land Use Commission in conservation
and agricultural districts along the coast, so that the 1975 shoreline protection
legislation for the first time supersedes state controls in an important area of
environmental concern.

D. Mandelker, *supra,* at 317-18 (footnote omitted).