PROTECT ALA WAI SKYLINE, Appellant-Appellant, *v.* LAND USE AND CONTROLS COMMITTEE OF THE CITY COUNCIL OF THE CITY AND COUNTY OF HONOLULU; CITY COUNCIL OF THE CITY AND COUNTY OF HONOLULU; JACK E. MYERS, Appellees-Appellees

NO. 11313

(CIVIL NO. 85-3802)

JANUARY 23, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Appellant-Appellant Protect Ala Wai Skyline (Appellant), a Hawaii non-profit corporation, appeals from the March 18, 1986 order of the First Circuit Court affirming the action of Appellee-Appellee City Council (Council) of the City and County of Honolulu (city) in granting a Special Management Area Use Permit (Permit) to Appellee-Appellee Jack E. Myers (Myers) pursuant to the Coastal Zone Management Act, Hawaii Revised Statutes (HRS) chapter 205A (1985), and the city's Ordinance No. 84-4 (Ordinance No. 84-4). We affirm.

I.

On May 10, 1985, the city's Department of Land Utilization (DLU) accepted Myers' application for a Permit to construct a hotel/condominium project (project) on a site then occupied by the Kaiser Medical Center on Ala Moana Boulevard in Kalia, Waikiki. The DLU held a public hearing on the project on July 9, 1985, and submitted its report (report) to the Council on July 16, 1985, recommending approval of the Permit application.[1]

The report described the project as a proposal to demolish the Kaiser Medical Center and erect on its site "two 30-story towers atop a five-story base." The first five stories would contain parking and other accessory uses, and the towers would house hotel rooms and possibly some condominium units. The total floor area of the project was to be 478,000 square feet. The report noted that the application addressed the project in its "general dimensions" and that "decisions on specific design and zoning variance issues will be made by the respective authorities following action on the [Permit] application." The report analyzed the project in the light of the guidelines contained in Ordinance No. 84-4 which, in accordance with HRS chapter 205A, established the regulations and procedures for obtaining a special management area permit

---

[1]The above account does not adequately describe the travails endured by Myers before submitting his application. The record reveals that he engaged in months of discussions with the Department of Land Utilization (DLU) regarding his proposals and projections before being permitted to submit his application. By the time Myers submitted his application, all of Myers' data and documentation regarding his proposal had already been reviewed by DLU.

for Oahu, and found it "to be generally consistent with the objectives and policies" of the ordinance. The report recommended that the Council approve the Permit application subject to certain conditions.

The DLU's report was referred by the Council to its Land Use and Controls Committee (LUC). A public hearing was held by the LUC and on September 18, 1985, the LUC reported its approval of the project through its Committee Report No. 804 (CR 804). On September 25, 1985, the Council adopted CR 804 and Resolution No. 85-324 (Resolution No. 85-324), which authorized issuance of the Permit subject to the conditions recommended by the DLU. The conditions related to maintenance of restroom facilities, public parking, roadways, access to Ala Wai Small Boat Harbor, and protection of historic sites. On October 4, 1985, Appellant appealed to the circuit court under HRS chapter 91 (1976 and Supp. 1984).[2] The circuit court affirmed the Council's action and Appellant appealed.

II.

The Council challenges Appellant's standing to appeal on the ground that Appellant was not incorporated until after the Permit was authorized on September 25, 1985, and, consequently, did not participate in the proceedings leading up to the issuance of the Permit.[3] The argument is without merit.

The rule in this jurisdiction is that the prerequisites to standing to appeal an administrative agency's decision are (1) injury resulting from the action and (2) involvement in the proceeding. *Mahuiki v. Planning Commission,* 65 Haw. 506, 654 P.2d 874 (1982). However, in proceedings involving environmental concerns, standing to challenge administrative determinations will not be defeated by restrictive application of technical standing requirements. *Id.,* 65 Haw. at 512, 654 P.2d at 878.

The record shows that two of Appellant's incorporators and officers, Dr. Robert S. Sitkin and David R. McFaull, participated extensively in

---

[2] While not deciding the point, we seriously doubt that the Land Use Committee, a committee of the Council, is an "agency" within the meaning of Hawaii Revised Statutes (HRS) chapter 91, since its function is only to recommend an action to the full Council, and it probably should not be a party in this case.

[3] The Council does not argue that Appellant has not suffered injury.

the proceeding leading up to the issuance of the Permit, both through written communication and in testimony at the public hearings. Appellant was incorporated for the purpose of pursuing alternatives to the project. Neither the incorporators nor any other affected person has appealed the Council's action. If Appellant is denied standing, those two individuals, and the others similarly situated, would be denied the opportunity to show that the Permit is illegal. *See id.*

## III.

We will now discuss the substantive issue raised by Appellant, whether the Council's action violated the provisions of HRS § 91-14(g) (1976).[4] In essence Appellant argues that the Council's action violated HRS §§ 91-14(g)(1), (4), (5) and (6). Our review is governed by the following standards:

> In an appeal from circuit court review of any agency decision, Hawaii appellate courts apply the same review standards applied by the circuit court. Agency fact findings are reviewable for clear error. In contrast, an agency's legal conclusions are freely reviewable. *Camara v. Agsalud,* 67 Haw. 212, 215-16, 685 P.2d 794, 796-97 (1984). An agency's interpretation of its rules receives deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose. *Id.* at 216, 685 P.2d at 797; 2 K. Davis, ADMINISTRATIVE LAW TREATISE § 7.22 at 105-06 (2nd ed. 1979).

---

[4] HRS § 91-14(g) (1976) provides:
Judicial review of contested cases.

\* \* \*

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1) In violation of constitutional or statutory provisions; or
    (2) In excess of the statutory authority or jurisdiction of the agency; or
    (3) Made upon unlawful procedure; or
    (4) Affected by other error of law; or
    (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
    (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Telephone Co.*, 68 Haw. \_\_\_, \_\_\_, 713 P.2d 943, 950 (1986).

### A.

Appellant argues that since Resolution No. 85-324 is the official act of the Council it must on its face show compliance with HRS § 205A-26(2)[5] and Ordinance No. 84-4.[6] Ordinance No. 84-4 was enacted by the Council pursuant to HRS chapter 205A, and establishes the regulations and procedures governing development of properties within the shoreline protection district on Oahu. Although CR 804 recites the findings required by the statute and the ordinance, Resolution No. 85-324 does not. Consequently, Appellant asserts that the Council's action violates HRS § 205A-26(2). The argument is without merit.

We note first that HRS chapter 205A delegates the implementation of its policies in large part to the counties. *Mahuiki v. Planning Commission*, 65 Haw. 506, 654 P.2d 874 (1982). In issuing permits under the aegis of chapter 205A and Ordinance No. 84-4, the Council is executing or administering laws already in existence, and is engaged in a nonlegislative act. *See Life of the Land, Inc. v. City Council of the City and County of Honolulu*, 61 Haw. 390, 606 P.2d 866 (1980).

Although under § 3-201 of the Revised Charter of Honolulu 1973

---

[5]HRS § 205A-26(2) (1985) provides as follows:

(2) No development shall be approved unless the authority has first found:

(A) That the development will not have any substantial adverse environmental or ecological effect, except as such adverse effect is minimized to the extent practicable and clearly outweighed by public health, safety, or compelling public interests. Such adverse effects shall include, but not be limited to. the potential cumulative impact of individual developments, each one of which taken in itself might not have a substantial adverse effect, and the elimination of planning options;

(B) That the development is consistent with the objectives, policies, and special management area guidelines of this chapter and any guidelines enacted by the legislature; and

(C) That the development is consistent with the county general plan and zoning. Such a finding of consistency does not preclude concurrent processing where a general plan or zoning amendment may also be required.

[6]Ordinance No. 84-4 reiterates the findings required by HRS § 205A-26(2) in its §§ 4B(1), (2), and (3), but adds a requirement that the development also conform to the "development plans, subdivision codes and other applicable Ordinances." *Id.* § 4B(3).

(1984 edition) non-legislative acts of the Council "may be by resolution," "[i]n exercising its non-legislative power, the City Council may do so by resolution or by resorting to some other parliamentary procedure, such as by voting on a motion made at council meeting." *Life of the Land, Inc. v. City Council,* 61 Haw. at 423, 606 P.2d at 887. Adoption of a committee report is a "parliamentary procedure," and is tantamount to a resolution. *Id.*

In the instant case the Council's general findings, as required by HRS § 205A-26(2) and Ordinance No. 84-4, are clearly stated in CR 804, beginning on page 8, as follows:

> Upon evaluation of the evidence before it, the Committee concluded that the Project (1) meets the objectives, policies, and guidelines and standards of Chapter 205A, Hawaii Revised Statutes, and Ordinance 84-4 of the City and County of Honolulu; (2) will not have any substantial adverse environmental or ecological effect, and (3) is consistent with the General Plan, and the applicable Development Plan and zoning for that area, subject to obtaining of a Development Conformance Certificate from the Director of Land Utilization and such other governmental approval as may be required for the project.

The Council thereafter made "further findings on specific issues going to the implementation of the objectives and policies of applicable law," relating to (1) access; (2) public recreation areas and wildlife preserves; (3) wind;[7] (4) traffic; (5) view; (6) reflectivity;[8] (7) solid and liquid waste disposal; and (8) alteration of land forms.

Stating the findings in CR 804, rather than Resolution No. 85-324 does not violate HRS chapter 205A and Ordinance No. 84-4.

### B.

Appellant argues that, assuming CR 804 contains the official findings of the Council, the findings are clearly erroneous because there is

---

[7]One of the concerns expressed by several witnesses at the hearings before the DLU and the LUC was the development's effect on the wind pattern over the adjoining Ala Wai Small Boat Harbor.

[8]Concern was also expressed about the adverse effects on the surrounding environment resulting from the use of reflective glass in the project's windows.

evidence in the record contrary to them. But the law does not require that all the evidence put before an administrative agency must support the agency's findings. It is legally sufficient if the findings are supported by the reliable, probative and substantial evidence in the whole record. HRS § 91-14(g)(5). *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984). Our review of the record convinces us that the Council's findings are indeed supported by the reliable, probative and substantial evidence in the record.

## C.

Appellant further argues that contrary to the Council's finding, the project is inconsistent with the General Plan, the Development Plan for Waikiki, and the city's Waikiki Special Design District Ordinance (WSDD). Ordinance No. 4573 (1979).

## I.

Appellant concedes that the General Plan is a statement of broad policies for the long-range development of Honolulu and does not have the force and effect of law. However, Appellant contends that, although the project comports generally with the General Plan's policy of maintaining the viability of Oahu's visitor industry, it is in conflict with several of the General Plan's other stated policies, such as prohibiting major increases in densities and further growth in hotel and resort condominium units in Waikiki, and preserving Oahu's beauty, natural environment, and scenic views. We find no merit in the argument.

The General Plan provides:

Interpretation

Conflicts which may arise regarding the interpretation or prioritization of any of the objectives and policies of the General Plan will be resolved by the City Council. All policy statements and the "% of total" figures in the population distribution table contained in this Plan are intended to serve as policy guidelines, as opposed to rigid requirements, in the preparation and amendment of Development Plans and agency plans, programs, and projects.

*General Plan,* Objectives and Policies, 17 (1982). The Council's interpretation of the General Plan is to be given deference unless plainly errone-

ous or inconsistent with the underlying legislative purpose. *See International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Telephone Co., supra.* The Council works with the General Plan almost on a daily basis. It is familiar with its terms and provisions, and is frequently called upon to interpret those provisions. We are not convinced that its finding in the instant case is plainly erroneous or inconsistent with the legislative purpose of the General Plan, HRS chapter 205A, or Ordinance No. 84-4.

While the General Plan guides development by expressing overall general goals to be sought in the planning process, *see* 1 McQuillin, *Municipal Corporations,* § 1.72 (1971), the actual physical development of a site is controlled by the development plan for the area in which the site is located, *see* D.L. Callies, *Regulating Paradise, Land Use Controls in Hawaii,* chapter 3 (1984), and its zoning. *McQuillin, supra,* §§ 1.72, 1.75.

The General Plan being prospective in nature, the prohibitions and concerns expressed therein must perforce apply to changes in use or zoning that might be proposed after its adoption and which would have the effect of increasing densities and promoting growth beyond those extant in 1982. The question really is whether the General Plan intended to prohibit any future expansion beyond the public and private facilities actually existing in Waikiki on the date of its adoption. We do not believe so. Had the Council so intended it would have rezoned all those Waikiki parcels zoned for resort, hotel, or condominium use at the time of the General Plan's adoption but not so developed, so as to preclude any further expansion of such property uses in Waikiki. Such action, however, would have been contrary to the General Plan's objectives as stated in its preamble.[9] Instead, in keeping with the planning process the Council recognized that control of development and density in Waikiki

---

[9]In its preamble the General Plan states:
The Plan is a two-fold document: First, it is a statement of the long-range social, economic, environmental, and design objectives for the general welfare and prosperity of the people of Oahu. These objectives contain both statements of desirable conditions to be sought over the long run and statements of desirable conditions which can be achieved within an approximate 20-year time horizon. Second, the General Plan is a statement of broad policies which facilitate the attainment of the objectives of the Plan. The General Plan is a guide[.]
*General Plan,* Objectives and Policies, 13 (1982).

must be established through development plans and zoning. The Development Plan for the Waikiki District and the WSDD constitute those specific controls.

In the instant case, the project site was zoned for hotel development prior to the adoption of the General Plan. No zoning change was needed to institute such development. Its development in accordance with that zoning was foreseen by the Council and is now *per se* in conformity with the General Plan.

2.

But Appellant argues that the development is inconsistent with the objective of the Development Plan for the Waikiki District of preserving and enhancing visibility and accessibility of open space areas and the limitation that "[r]esort facilities shall be developed to support a destination area of about 30,000 visitors."

Extensive evidence was presented on all sides of both these questions. The Council considered that evidence and found that the development was not contrary to the Development Plan. We have examined the evidence and are not convinced that the Council was in error. Appellant has not presented anything to show that the resort facilities will exceed those necessary to support the 30,000 visitors.

3.

Appellant's argument that the Permit is inconsistent with the legislative intent of the WSDD ordinance is likewise without merit. The question of traffic and utility problems cited by Appellant and addressed by the WSDD ordinance were considered by the Council. It found that there would be no detrimental impact caused by the development. We are not at liberty, on this record, to substitute our judgment for theirs. *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984).

D.

Appellant argues that the Council abused its discretion in issuing the Permit because of the inconsistencies Appellant has pointed out. However, in view of the above discussion we hold that the Council's action in

issuing the Permit did not clearly exceed the bounds of reason or disregard rules or principles of law. Consequently, its action was not an abuse of discretion. *See In re Hawaiian Telephone Co.,* 67 Haw. 320, 689 P.2d 741 (1984).

We hold that the Council's action was not in violation of HRS § 91-14(g)(1), (4), (5), or (6), and the circuit court's affirmance thereof was correct.

Affirmed.

*Christopher R. Evans* (*Louisa R. Lindow* with him on the brief) for appellant.

*A. Bernard Bays* (*Jerry Michael Hiatt* and *Craig K. Shikuma* with him on the brief; *Bays, Deaver, Hiatt, Kawachika & Lezak,* of counsel) for appellee Myers.

*Jane H. Howell,* Deputy Corporation Counsel, City and County of Honolulu, for appellees Land Use and Controls Committee and City and County of Honolulu.