**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed**
**Supreme Court**
**SCOT-16-0000690**
**02-DEC-2021**
**09:17 AM**
**Dkt. 103 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

THE COMMUNITY ASSOCIATIONS OF HUALALAI, INC.,
Appellant,

vs.

LEEWARD PLANNING COMMISSION, COUNTY OF HAWAI'I; and
ZENDO KERN,[1] PLANNING DIRECTOR, COUNTY OF HAWAI'I,
Appellees.

_____

SCOT-16-0000690

APPEAL FROM THE LEEWARD PLANNING COMMISSION, COUNTY OF HAWAI'I
(Agency Docket No. SPP-16-000188)

DECEMBER 2, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.[2]

OPINION OF THE COURT BY WILSON, J.

---

[1]     Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c)(1) (2019), Zendo Kern has been substituted as a party in place of Duane Kanuha, the former Planning Director of the County of Hawai'i.

[2]     Associate Justice Richard W. Pollack, who was a member of the court when the oral argument was held, retired from the bench on June 30, 2020.

This is a direct appeal[3] from a special permit application proceeding before Appellee Leeward Planning Commission ("LPC") and Appellee Planning Director ("Planning Director") of the County of Hawaiʻi (collectively, "Appellees") by Appellant The Community Associations of Hualalai ("Hualalai"), a group of Hawaiʻi County community associations. See HRS §§ 205-19 (2017) and 91-14 (2017).  The special permit application requested approval to use an agricultural parcel of land as an equipment base yard and security dwelling, and for stockpiling and crushing natural materials for commercial use. We find Appellees wrongfully denied Hualalai a hearing and decision on its petition to intervene as a party to contest the special permit application, and remand to the LPC for proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Bolton's Permit Application and Appellant/Hualalai's Petition to Intervene

On February 4, 2000, the Hawaiʻi County Planning Commission[4] issued Special Permit No. 1047 to Nani Kona Coffee

---

[3]     In 2016, the legislature adopted Act 48 "to provide for the expedited judicial review of certain contested case proceedings."  Conf. Comm. Rep. No. 67-16, in 2016 House Journal, at 1363, 2016 Senate Journal, at 789.  Under Act 48, aggrieved parties may appeal from a final decision or order in certain administrative proceedings directly to the supreme court. Hawaiʻi Revised Statutes ("HRS") § 205-19 (2017).

[4]     At the time, the County of Hawaiʻi had one planning commission for the whole county.  In 2008, the County Council passed, and the voters

(continued . . .)

2

LLC granting construction of a "coffee visitor center" and related improvements on a parcel of approximately 7.33 acres of land "located on the southeast corner of the Hawaii Belt Road and Hualalai Road intersection" within the state and county agricultural land use districts.  Approval was granted pursuant to the Planning Commission's authority under HRS § 205-6 to issue special permits.  Approval of Special Permit No. 1047 was subject to conditions:  Condition No. 4 required that the "coffee visitor center and all related improvements" be established within five years from the effective date of the permit, and Condition No. 9 required the applicant to submit a drainage study to the Department of Public Works and complete all improvements required to mitigate flooding before the issuance of any building permits.  Nani Kona Coffee LLC was subsequently granted two administrative time extensions to comply with Condition No. 4:  one in September 2004 until February 2007, and one in 2007 until February 2010.

Some years later, in 2015 and 2016, Bolton, Inc. ("Bolton")[5] applied for a grading permit (Permit No. 092524) and

---

(. . . continued)

approved, an ordinance dividing the commission into the windward and leeward planning commissions, effective April 1, 2009.  Ord. No. 08-01 (2008).

[5]     The record indicates that Daniel B. Bolton of Kona Coffee & Tea Company was one of Nani Kona Coffee LLC's points of contact regarding Special Permit 1047 and communicated with the Planning Department between July 1998

(continued . . .)

two stockpiling permits (Permit Nos. 092525 and 092529) to complete the "Kona Coffee & Tea Co. Flood Channel Project" on two parcels of land on "Hualalai R[oa]d [m]auka of Queen K[a'ahumanu Highway]." The first parcel, identified by Tax Map Key ("TMK") number 7-5-17:31 ("Parcel 31"), is the parcel for which Special Permit No. 1047 was issued in 2000;[6] the second parcel, identified by TMK number 7-5-17:44 ("Parcel 44"), is adjacent to and immediately east/mauka of Parcel 31. The two parcels are owned by Daniel B. Bolton and Janet T. Bolton of Bolton, Inc. Bolton's applications for grading and stockpiling on the two parcels were approved in January 2016 by the Hawai'i County Planning Department and the Department of Public Works, with approval of the grading permit conditioned on compliance with Condition No. 9 of Special Permit No. 1047.

Approximately one month after approval of the grading and stockpiling permits, on February 19, 2016, Appellee/Planning

---

(. . . continued)

and August 2004, both in his individual capacity and in an organizational capacity as Bolton, Inc.

[6] The record from 2000 identifies the parcel for which Special Permit No. 1047 was issued by TMK number "7-5-17:33[.]" However, the parcel is described as being at the location of the current Parcel 31, and elsewhere in the record, Special Permit No. 1047 is described as having been issued for Parcel 31. This discrepancy is not explained in the record, although there are indications that there was a "[c]orrection of TMK number" in 2001 and that "Parcel 44 was subdivided from [Parcel] 31" at some point in time.

Director[7] sent Bolton a "Warning Letter" concerning activity on the two parcels.  According to the letter, the Planning

---

7    The Planning Director is part of the Hawai'i County Planning Department, which consists of "a planning director, a windward planning commission, a leeward planning commission and the necessary staff," and regulates land use within the County of Hawai'i.  Charter of the County of Hawai'i ("CCH" or the "Charter") § 6-7.1 (2018).  The Planning Director is "the chief planning officer of the county and the administrative head of the department[.]"  CCH § 6-7.2(b).  The duties and functions of the Planning Director are set out in the Charter as follows:

> The director . . . shall:
>
> (1)  Advise the mayor, the windward planning commission, the leeward planning commission and the council on all planning and land use matters.
>
> (2)  Prepare a general plan, implementation plans and any amendments thereto in accordance with Section 3-15.
>
> (3)  Prepare proposed zoning and subdivision ordinances, zoning maps and regulations and any amendments thereto.
>
> (4)  Review the lists of proposed capital improvements contemplated by agencies of the county and recommend the order of their priority.
>
> (5)  Administer the subdivision and zoning ordinances and regulations adopted thereunder.
>
> (6)  Render decisions on proposed subdivision plans pursuant to law.
>
> (7)  Make recommendations on rezoning applications, special exceptions and other similar requests.
>
> (8)  Render decisions on proposed variances pursuant to law, except that, if any written objections are made to the planning director's actions under this section, said actions shall be subject to review by the board of appeals in accordance with Section 6-9.2, unless otherwise provided by law or this charter.
>
> (9)  Perform such other related duties and functions as may be necessary or required pursuant to law and this charter.

Id.  The Planning Director also enforces all provisions of the Zoning Code pertaining to land use, other than those relating to building construction and occupancy.  Hawai'i County Code ("HCC") § 25-2-1(b) (2019).  "Any person aggrieved by the decision of the director in the administration or

(continued . . .)

Department had received a complaint that Bolton was operating a quarry on the parcels and using the parcels as an equipment base yard without an applicable special permit.  A subsequent investigation revealed that Bolton appeared to be operating a rock crusher for commercial purposes (i.e., operating a quarry) on Parcel 44, storing construction equipment on the parcels (i.e., using the properties as a construction base yard), and maintaining a junk yard on the parcels.  The letter warned Bolton that those activities potentially violated the Zoning Code,[8] and requested a response from Bolton by April 30, 2016.  The letter stated that if Bolton wanted to conduct a commercial quarry operation, it could "submit an application for a special permit that would allow for the creation of a (Quarry) and would

_____

(. . . continued)

application of [the Zoning Code], may, within thirty days after the date of the director's written decision, appeal the decision to the board of appeals."  HCC § 25-2-20(a) (2019).  The Board of Appeals "[h]ear[s] and determine[s] appeals from final decisions of the planning director or the director of public works regarding matters within their respective jurisdictions."  CCH § 6-9.2(a) (2018).

[8]     Under state law and Chapter 25 of the HCC ("Zoning Code"), land within the state agricultural land use district is restricted to certain permitted uses.  See HRS § 205-4.5(a) (2017); HCC § 25-5-72(a).  "[E]nforcement of the restrictions and conditions relating to land-use-classification districts in a county" is delegated "to the county official charged with administering the zoning laws for that county[.]"  County of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 408, 235 P.3d 1103, 1120 (2010) (quoting Pono v. Molokai Ranch, Ltd., 119 Hawai'i 164, 189, 194 P.3d 1126, 1151 (App. 2008)), partially abrogated on other grounds by Tax Found. of Haw. v. State, 144 Hawai'i 175, 439 P.3d 127 (2019); HRS § 205-12 (2017).  In this case, the official responsible for administering the zoning laws in Hawai'i County is the Planning Director, with the LPC also retaining some authority over zoning and land use within the County.

allow for the use of the properties as a construction base yard," so long as Bolton "immediately cease[d]" commercial and unauthorized activity.[9]

On March 1, 2016, Bolton submitted an application ("Special Permit Application No. SPP-16-188") to the Planning Department, requesting a special permit to use Parcel 44 for "[a] baseyard/staging yard for equipment, storage of materials, stockpiling and crushing of natural materials for commercial use" and a "[s]ecurity dwelling[.]"  Bolton stated that Special Permit Application No. SPP-16-188 was intended to resolve the issues raised in the February 19 warning letter and to bring Parcel 44 into compliance with the Zoning Code.

On April 12, 2016, Bolton sent a letter to the Planning Department disputing that it had violated the Zoning Code, as suggested in the February 19 warning letter, but

---

[9]     Regarding rock crushing or quarrying activity, the Zoning Code provides:

> (c)  The following uses may be permitted in the [county agricultural] district, provided that a special permit is obtained for such use if the building site is located within the State land use agricultural district:
>
> . . . .
>
> (5)  Excavation or removal of natural building material or minerals, for commercial use.

HCC § 25-5-72.

7

stating that it had filed Special Permit Application No. SPP-16-188 "[a]s a show of good faith and cooperation[.]"

On April 22, 2016, Bolton was notified that Special Permit Application No. SPP-16-188 was scheduled for a public hearing before the LPC[10] on May 19, 2016.[11]  The agenda for the

---

[10]  Appellee/LPC, like the Planning Director, see supra note 7, is part of the Hawai'i County Planning Department, which regulates land use within the County of Hawai'i.  CCH § 6-7.1 (2018).  The duties and functions of the LPC are set out in the Charter:

> (a)  Both [the windward and leeward planning] commissions shall:
>
> > (1)  Advise the mayor, council and the planning director on planning and land use matters pursuant to law and this charter.
> >
> > (2)  Review the general plan, its amendments and other plans and modifications thereof and transmit such plans with recommendations thereon through the mayor to the council for consideration and action.
> >
> > (3)  Review proposed subdivision and zoning ordinances and amendments thereto and transmit such ordinances with recommendations thereon through the mayor to the council for consideration and action.
> >
> > (4)  Conduct public hearings in every case prior to action on any matter upon which the commission is required by law or this charter to act.  Notice of the time and place of the hearing shall be published at least ten days prior to such hearing in at least two daily newspapers of general circulation in the county and shall also be distributed via an electronic medium, such as the Internet.
> >
> > (5)  Perform such other related duties and functions as may be necessary or required pursuant to law and this charter.
>
> . . . .
>
> (c)  Each planning commission shall review and take action upon applications for land use changes and community development plans involving only property within their

(continued . . .)

8

LPC's May 19 meeting gave public notice that Special Permit Application No. SPP-16-188 would be considered as Agenda Item No. 4.  The agenda explained how a party could seek to intervene:

> Pursuant to Rule 4, Contested Case Procedure, of the County of Hawai'i Planning Commission Rules of Practice and Procedure, any person seeking to intervene as a party to a contested case hearing on the above Agenda Items Nos. 1 through 4 is required to file a written request which must be received in the office of the Planning Department no later than seven (7) calendar days prior to the Planning Commission's first public meeting on the matter.  Such written request shall be in conformity with Rule 4, in a form as provided by the Planning Department entitled "Petition for Standing in a Contested Case Hearing."

The agenda referenced County of Hawai'i Planning Commission Rules of Practice and Procedure ("LPC Rules") Rule 4 (2017), which allows a person to request to formally intervene and be admitted as a party to the proceeding.  LPC Rule 4-6 provides, in relevant part:

_____

(. . . continued)

> respective jurisdictions, other than those involving the general plan.

CCH § 6-7.5 (2018).  The LPC has adopted and is subject to "[a] uniform body of rules of practice and procedure[.]"  CCH § 6-7.5(b).

[11]    The LPC presides over special permit applications and proceedings because it has the authority to "permit certain unusual and reasonable uses within [the] agricultural . . . district[] other than those for which the district is classified."  HRS § 205-6(a) (2017).  A party wishing to engage in such use, such as Bolton, "may petition the planning commission . . . for permission to use the person's land in the manner desired" by applying for and obtaining a special permit from the planning commission pursuant to HRS § 205-6 before engaging in the "unusual" use.  Id.; HCC § 25-5-72(c).  Regarding the special permit application process, the county planning commission must "establish by rule or regulation, the time within which the hearing and action on petition for special permit shall occur[,]" HRS § 205-6(b), and may permit the desired use by a majority vote of the commission's members, HRS § 205-6(c).

9

(a)  In all proceedings where the Commission's action is directly appealable to Third Circuit Court, the applicant and the Planning Director will be designated parties to the action.  Any other person seeking to intervene as a party shall file a written request on a form approved by the Planning Director and accompanied by a filing fee of $200 no later than seven calendar days, prior to the Commission's first meeting on the matter.  If the applicant files a request with the Commission for the deferral or continuance of the hearing prior to the commencement of the hearing, the next regularly scheduled meeting of the Commission will then be considered the subsequent rescheduled hearing date.  If the request for intervention is withdrawn in writing before the commencement of the hearing, the filing fee shall be refunded to the person seeking standing to intervene.

(b)  Upon receipt of a written request to intervene, the Commission, at the first meeting on the matter, shall hold a hearing on the written request.  The petitioner shall be admitted as a party if it can demonstrate that:

(1)  His or her interest is clearly distinguishable from that of the general public; or

(2)  Government agencies whose jurisdiction includes the land involved in the subject request; or

(3)  That they have some property interest in the land or lawfully reside on the land; or

(4)  That even though they do not have an interest different than the public generally, that the proposed action will cause them actual or threatened injury in fact; or

(5)  Persons who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, who practice those rights which are customarily and traditionally exercised for subsistence, cultural or religious purposes.

The Commission will grant or deny such written request prior to any further action on the matter.

(c)  Appeal from Denial.  Any petitioner who has been denied standing as a party may appeal such denial to the Third Circuit Court pursuant to Section 91-14, Hawai'i Revised Statutes.

(d)  After establishing the parties to the proceeding, the Commission may either proceed with the hearing, or continue the matter to a more appropriate time and date.

LPC Rule 4-6.

On May 9, 2016 the Planning Department issued a background report on Special Permit Application No. SPP-16-188, in which it noted that Special Permit No. 1047 had been approved for Parcel 31 in 2000, that Bolton had received an extension until 2010 to comply with Condition No. 9, and that "[a]ny additional time extensions to comply with conditions will need to be approved by the [LPC]." That same day, the Planning Department also issued a recommendation to the LPC in which the Planning Director recommended that the LPC approve Bolton's Special Permit Application No. SPP-16-188, with the caveat that "[s]ince this recommendation is made without the benefit of public testimony, the Director reserves the right to modify and/or alter this position based upon additional information presented at the public hearing."[12]

On May 12, 2016, a week before the LPC's scheduled public meeting on Special Permit Application No. SPP-16-188, Appellant/Hualalai submitted a "Petition for Standing in a Contested Case Hearing" (hereinafter "petition to intervene" or "petition")[13] and paid the associated $200.00 filing fee.

---

[12] Although the Planning Department's background report and recommendation are not contiguous in the record, they appear to have been filed or published together as they are formatted identically and the first page of both documents are marked with "RBolton-SPP16-188.jwd 05-09-16" in the upper righthand corner.

[13] Hualalai submitted its petition alongside a LPC form titled, "Petition for Standing in a Contested Case Hearing." The form's language

(continued . . .)

Hualalai noted in its petition that it was "a non-profit association consisting of four community associations that represent[ed] and act[ed] for the interest of owners of residences and residential lots in four subdivisions" located near Hualalai Road in North Kona, Hawai'i County, as well as a limited liability company ("LLC") with "interest in the ownership and use of residential properties" in the same area. Hualalai "act[ed] in a representative capacity" for the four community associations and their members, and the LLC. Hualalai was formally organized on May 11, 2016. In its petition, Hualalai identified a number of ways in which its interests were "clearly distinguishable from that of the general public," and would be affected if the LPC granted Special Permit Application No. SPP-16-188. Hualalai stated that it represented property owners who owned residential properties in the near vicinity of Parcel 44, enjoyed the protections of the County General Plan and the Kona Community Development Plan, and faced individual injuries and threatened injuries to their properties from the noise, dust, negative aesthetic effects, negative effects on

---

(. . . continued)

tracks LPC Rule 4-6(b), which outlines the criteria for establishing standing to intervene in a contested case. To avoid confusion, Hualalai's petition will be referred to as a "petition to intervene" rather than a "petition for standing."

nearby neighborhoods, diminished property values, and increased traffic from the proposed development.

On May 19, 2016, Bolton requested a continuance of the hearing scheduled for later that day. During the LPC meeting that day, the LPC's chair announced that, at Bolton's request, the LPC would postpone the hearing on Special Permit Application No. SPP-16-188 until a future meeting. The chair announced that "there would be no presentation by staff, the applicant, or the petitioner for a contested case hearing," but that the LPC would permit oral testimony from members of the public. The LPC heard testimony from members of the public, including residents of the subdivisions whose community associations comprise Hualalai, an attorney representing Hualalai, and the president of Hualalai. These individuals testified that the noise, dust, traffic, and vibrations caused by Bolton's proposed activity would negatively affect their health, quality of life, and property values. The LPC received additional written testimony from individuals opposed to Special Permit Application No. SPP-16-188 for the same reasons.

On May 23, 2016, Bolton was notified that Special Permit Application No. SPP-16-188 had been rescheduled, per its request, for a public hearing on June 16, 2016. That same day, the Planning Director notified Hualalai that its petition to intervene had been received and would be forwarded to the LPC

13

for their review.  The Planning Director informed Hualalai that its presence was required at the upcoming June 16 hearing to answer questions from the LPC on its petition.

On June 1, 2016, Bolton requested another postponement of the hearing for Special Permit Application No. SPP-16-188 until further notice.  On June 7, 2016, the Planning Director notified Bolton that he would "defer the application" until Bolton requested that it be added back to the LPC agenda.

Following the Planning Director's June 7 letter, between June 17 and August 23, there was further communication between Bolton and the Planning Director regarding Bolton's use of Parcels 31 and 44 and Special Permit Application No. SPP-16-188.  Bolton sent at least three letters to the Planning Director, and Bolton and the Planning Director scheduled an in-person site inspection of Bolton's property.  The correspondence between Bolton and the Planning Director reflected substantial fact-finding by the Planning Director.  On June 30, 2016, Bolton attended an in-person meeting with the Planning Director, and sent a July 12 "follow up" letter that contained "specific information" the Planning Director had "requested" at the June 30 meeting.  On July 27, 2016, the Planning Director sent Bolton a letter stating that although Bolton's July 12 letter "provide[d] some clarity, it d[id] not quite contain the specific information" the Planning Director requested at the

14

June 30 meeting, and made additional inquiries of Bolton. On August 23, the Planning Director sent another letter informing Bolton that a site inspection was required due to "apparent contradictions between the information provided in [Bolton's] previous July 12, 2016 letter and [Bolton's] latest submittal." The Planning Director asserted that the site inspection was "necessary in order for us to make a final determination on the parameters of [Bolton's] Special Permit application."

The Planning Department's Zoning Inspector and representatives from the Department of Public Works attended an in-person site inspection. After the inspection, on September 21, 2016, the Planning Director sent Bolton an "Assessment of Conditions Relating to Warning Letter dated February 19, 2016 . . . and Disposition of Special Permit Application No. 16-000188[.]"[14] In the September 21 letter, the Planning Director described the communications between Bolton and himself as "a series of letters and confirmations requested of Bolton Inc. in an effort to determine whether or not a violation of the Zoning Code or State Land Use Law had occurred and if so, whether or not the Special Permit application filed by Bolton Inc. would continue to move forward." The September 21 letter stated that "[a]fter further consultation and field verification," the

_____

[14] Hualalai was copied on this letter.

15

Planning Director determined that the activity conducted on Parcel 44 fell under the grading permit and stockpiling permits previously granted to Bolton, and did not require a special permit under the Zoning Code.

The letter noted that a special permit was required to run a quarry, which is the "excavation or removal of natural building materials or minerals, for commercial use."  However, the letter concluded that "the evidence" indicated that Bolton's "removal of natural building material from the subject property is related to on-site and off-site drainage improvement purposes[,]" and not for commercial purposes.  The letter advised Bolton that, because a special permit was not required, "your Special Permit application will be withdrawn from further processing[.]"

In a September 28, 2016 letter, Bolton acknowledged receipt of the Planning Director's September 21 letter and asked the Planning Director to "accept this letter as our formal request for the withdrawal of [Special Permit Application No. SPP-16-188]."  That same day, Hualalai sent a letter to the Planning Director objecting to his "purported 'disposition'" of the February 19 warning letter and Special Permit Application No. SPP-16-188.  Hualalai noted that Special Permit Application No. SPP-16-188 and its intervention petition were currently pending before the LPC in a special permit proceeding, and

requested that the Planning Director forward Hualalai's letter to the Chairperson and LPC "before [the Planning Director] d[id] anything further on this matter."  In its letter, Hualalai argued extensively against the issuance of Special Permit Application No. SPP-16-188.  Hualalai objected to the Planning Director's purported "disposition" of Special Permit Application No. SPP-16-188, and argued that "no law gives the [LPC]'s staff the authority to 'dispose' of an accepted application or to allow an application to be 'withdrawn' after the [LPC] has taken jurisdiction of the application."

On October 4, 2016, the Planning Director notified Bolton that, "[based] on your request and our letter dated September 21, 2016, we will be withdrawing [Special Permit Application No. SPP-16-188]."

On October 11, 2016, the Planning Director notified Hualalai that although the Planning Department had "previously acknowledged receipt" of Hualalai's petition to intervene, he had "recently received a request by the applicant to withdraw [Special Permit Application No. SPP-16-188]," and notified Hualalai that the Planning Department would be refunding Hualalai's $200.00 filing fee.

On October 13, 2016, Hualalai filed a new petition with the LPC objecting to the Planning Director's withdrawal of Special Permit Application No. SPP-16-188.  Hualalai argued that

only the LPC had jurisdiction over the application, and that the LPC could "dispose" of the application only after holding a public hearing.  Hualalai requested that the matter be placed on the LPC's agenda for an immediate public hearing.  The LPC did not take any further action.

## B.   Appeal to the Supreme Court

As discussed above, Bolton submitted Special Permit Application No. SPP-16-188 pursuant to HRS § 205-6 to resolve the potential Zoning Code violations identified by the Planning Director, i.e., operating a quarry, and maintaining a construction base yard and a junk yard.  After the Planning Director withdrew Special Permit Application No. SPP-16-188, Hualalai filed a direct appeal to this court, challenging the LPC's failure to issue a decision on its petition to intervene and objecting to the Planning Director's withdrawal decision and the LPC's decision to treat the proceeding as a closed matter.

Hualalai presents five points of error to this court: (1) "The Appellee [LPC] erred when it failed to rule on the Appellant's Petition to Intervene in the Contested Case"; (2) "The Appellee [LPC] erred when it failed to render a decision on [Special Permit Application No. SPP-16-188] itself"; (3) "The Appellee Planning Director erred in exercising the Appellee [LPC]'s adjudicatory powers when he 'withdrew' the Application"; (4) "The Appellee [LPC] erred when it allowed the

18

Appellee Planning Director to act for the Commission"; and

(5) "The Appellee Planning Director erred when he concluded that

the county grading permit (issued in 2015 after Special Permit

1047 had expired in 2010) 'controlled' and that the flood

channelization project is a permitted use in the State

Agriculture Land Use District."  Hualalai requests the following

relief:

> This court should vacate the Appellee Planning Director's
> letters of September 21, 2016 . . . and October 4,
> 2016 . . . to the extent that they constitute an agency
> order herein and should remand the contested case to the
> Appellee Leeward Planning Commission with instructions that
> (1) the Commission conduct a hearing on the Appellant's
> Petition for Standing in a Contested Case, (2) that the
> Commission either grant or deny the petition and,
> thereafter and [sic] (3) the Commission take action on the
> Appellee-Applicant Bolton, Inc.'s Application, including
> any request that the Appellee-Applicant might make to
> withdraw the Application, giving the Appellant the
> opportunity to participate in the agency proceeding on
> remand if the Appellee Leeward Planning Commission votes to
> admit the Appellant as a party in the contested case.

Hualalai contends this court has jurisdiction to

consider its appeal under HRS § 205-19, which governs appeals of

contested cases arising before the land use commission and

applies the provisions in HRS chapter 91 to such appeals.

Appellees argue that this court lacks jurisdiction over the

LPC's "non-action," that the issue became moot when Special

Permit Application No. SPP-16-188 was withdrawn, and that

Hualalai lacks standing.  Appellees argue that this court also

lacks jurisdiction because Hualalai should appeal the Planning

Director's decision to the Board of Appeals.  Finally, Appellees

19

argue that the LPC did not abuse its discretion by ending proceedings on Special Permit Application No. SPP-16-188 once it was voluntarily withdrawn by Bolton.  Throughout its brief, Appellees emphasize that Hualalai "got exactly what it wanted from the LPC" because Special Permit Application No. SPP-16-188 "was never approved."

## II.  STANDARD OF REVIEW

Pursuant to HRS § 205-19, this court reviews agency decisions in contested cases under HRS § 91-14, which states, in relevant part:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1)  In violation of constitutional or statutory provisions;
> >
> > (2)  In excess of the statutory authority or jurisdiction of the agency;
> >
> > (3)  Made upon unlawful procedure;
> >
> > (4)  Affected by other error of law;
> >
> > (5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (6)  Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g).  This court has further clarified that

> [c]onclusions of law are reviewed de novo, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact (FOF) are reviewable under the clearly

20

> erroneous standard, pursuant to subsection (5), and an agency's exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6).

Lāna'ians for Sensible Growth v. Land Use Comm'n, 146 Hawai'i 496, 502, 463 P.3d 1153, 1159 (2020) (quoting Kauai Springs, Inc. v. Planning Comm'n of Kaua'i, 133 Hawai'i 141, 164, 324 P.3d 951, 974 (2014)).

When interpreting agency rules, this court has stated that "[g]eneral principles of statutory construction apply," which requires "look[ing] first at an administrative rule's language." Liberty Dialysis-Haw., LLC v. Rainbow Dialysis, LLC, 130 Hawai'i 95, 103, 306 P.3d 140, 148 (2013).

> If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. While an agency's interpretation of its own rules is generally entitled to deference, this court does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose.

Id. (internal citations and quotation marks omitted).

### III.  DISCUSSION

**A.  The Instant Appeal is Not Moot; This Court May Exercise Judicial Review of Hualalai's Appeal Pursuant to HRS §§ 205-19 and 91-14**

**1.  Appellees' withdrawal of Special Permit Application No. SPP-16-188 does not render this case moot because Hualalai's appeal presents a live controversy.**

Appellees contend that Hualalai's appeal is moot because Special Permit Application No. SPP-16-188 has been withdrawn, thus ending Hualalai's adverse interest in the case

21

and removing this court's ability to order an effective remedy. "This court has stated that '[a] case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law.'" In re Marn Family, 141 Hawai'i 1, 7, 403 P.3d 621, 627 (2016) (quoting Ala Loop Homeowners, 123 Hawai'i at 405, 235 P.3d at 1117). In other words, "a 'case is moot if the reviewing court can no longer grant effective relief.'" Id. (quoting Ala Loop Homeowners, 123 Hawai'i at 405, 235 P.3d at 1117).

Appellees' withdrawal of Special Permit Application No. SPP-16-188 does not render this case moot because, as in Kona Old Haw. Trail Grp. v. Lyman, 69 Haw. 81, 734 P.2d 161 (1987), Hualalai's appeal presents a "live controversy" and this court is able to "grant effective relief." In re Marn Family, 141 Hawai'i at 7, 403 P.3d at 627 (internal citations and quotation marks omitted). In Kona Old, an association of Kona residents ("Kona Old") appealed the Planning Director's issuance of a special management area minor use permit to the circuit court under HRS § 91-14(a).[15] 69 Haw. at 84-89, 734 P.2d at 163-

---

[15] HRS § 91-14(a) states, in relevant part, "Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]"

The permit authorized the property owner to develop the property by consolidating his two parcels, installing utility lines and roadways, and subdividing the property into residential lots. Id. at 84, 734 P.2d at 163-64. The Planning Director moved to dismiss the appeal, arguing that there was no "contested case"[16] and Kona Old was not a "person aggrieved" within the meaning of HRS § 91-14. Id. at 86, 734 P.2d at 165. The circuit court granted the dismissal,[17] and Kona Old appealed to this court. Id. While Kona Old's appeal was pending, in anticipation of a sale, the landowner procured and completed work under a grubbing permit for the property. Id. The landowner then argued that the appeal should be dismissed as moot because the work under the grubbing permit had been completed. Id. The supreme court declined to dismiss the appeal as moot, holding that the appeal was a live controversy and "retain[ed] vitality" because, so long as the construction authorized under the original special management area minor use

---

[16]     In Kona Old, the Planning Director issued to the landowner a "special management area minor use permit" as opposed to a "special management area use permit." Id. at 84, 734 P.2d at 164. On appeal, the supreme court noted that the rules governing the issuance of special management area minor use permits did not mandate a hearing preceding the Planning Director's issuance of such permits. Id. at 90, 734 P.2d at 167. Thus, as a hearing was not required by statute or agency rules, there was no contested case within the meaning of HRS § 91-14(a). Id.

[17]     Although the circuit court did not give a reason for dismissal, this court stated that the circuit court dismissed the appeal "obviously on jurisdictional grounds." Kona Old, 69 Haw. at 89, 734 P.2d at 166.

permit was not complete, the appeal "present[ed] an adversity of interests and possibly afford[ed] [Kona Old] an effective remedy." Id. at 87, 734 P.2d at 165. This court found that even if all work under the two permits was completed, "a basis for the exercise of our appellate jurisdiction remain[ed]" because the public interest exception to the mootness doctrine would apply.[18] Id.

In the present case, Appellees are correct that Special Permit Application No. SPP-16-188 was withdrawn. However, an adversity of interests continues to render the controversy "live" because either: the original conduct that prompted Bolton to submit Special Permit Application No. SPP-16-188 remains ongoing, or, if Bolton's development project is completed without review, similar withdrawal of permit applications subsequent to unpermitted construction is capable of repetition. There remains an adversity of interests here because the Planning Director made a "final determination" that "the evidence" showed Bolton's construction activity was covered by its existing permits, and Hualalai has an interest in arguing

---

[18] The public interest exception applies "[w]hen the question involved affects the public interest, and it is likely . . . that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made[.]" Id. (quoting Johnston v. Ing, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968)). This court reasoned that the questions in Kona Old were of public concern and, if they were to recur in the future, would likely become moot before a determination on appeal could be made. Id. at 87-88, 734 P.2d at 165-66.

24

that the evidence showed otherwise. Namely, Hualalai has an interest in arguing that Bolton's construction activity exceeded the conditions of its existing grading and stockpiling permits (Permit Nos. 092524, 092525, and 092529) and, therefore, required an additional special permit.[19]

Analogous to the appeal in Kona Old, Hualalai's appeal also "retains vitality" because the appeal "possibly affords [it] an effective remedy[,]" that is, remand to the LPC for a hearing to determine whether Hualalai's petition to intervene should be granted or denied. Id. Thus, under the facts of this case, Appellees' withdrawal of Special Permit Application No. SPP-16-188 does not render moot Hualalai's appeal to this court.

**2. Pursuant to HRS §§ 205-19 and 91-14, this court may exercise judicial review because Hualalai is aggrieved by a final decision in a contested case, participated in the contested case, followed LPC Rules, and has established standing.**

Appellees argue that this court lacks jurisdiction over Hualalai's appeal pursuant to HRS §§ 205-19 and 91-14 because the LPC did not issue a final decision in a contested case hearing and Hualalai was not injured by the LPC's failure to issue a decision on Hualalai's petition or the LPC's withdrawal of Special Permit Application No. SPP-16-18. HRS

---

[19] For example, evidence showing that Bolton's excavation and removal of natural building material from the property was, in fact, for commercial purposes, as prohibited by HCC § 25-5-72(c) without a special permit.

§§ 205-19 and 91-14 provide the requirements for judicial review of direct appeals of contested cases to this court; HRS § 205-19(a) applies the requirements of chapter 91 to contested cases before the LPC:

> Chapter 91 shall apply to every contested case arising under this chapter except where chapter 91 conflicts with this chapter, in which case this chapter shall apply. Any other law to the contrary notwithstanding, including chapter 91, any contested case under this chapter shall be appealed from a final decision and order or a preliminary ruling that is of the nature defined by section 91-14(a) upon the record directly to the supreme court for final decision.

HRS § 205-19(a). This case arises under chapter 205 because it involves a special permit application to the LPC, an agency[20] that possesses authority to rule on such applications pursuant to HRS § 205-6.[21] HRS § 91-14(a) further provides, "Any person

---

[20] The LPC is an agency because it is a "county . . . commission . . . authorized by law to make rules or to adjudicate contested cases." HRS § 91-1 (2017).

[21] HRS § 205-6 provides in relevant part:

(a) Subject to this section, the county planning commission may permit certain unusual and reasonable uses within agricultural and rural districts other than those for which the district is classified. Any person who desires to use the person's land within an agricultural or rural district other than for an agricultural or rural use, as the case may be, may petition the planning commission of the county within which the person's land is located for permission to use the person's land in the manner desired. . . .

(b) The planning commission, upon consultation with the central coordinating agency, except in counties where the planning commission is advisory only in which case the central coordinating agency, shall establish by rule or regulation, the time within which the hearing and action on petition for special permit shall occur. The county planning commission shall notify the land use commission

(continued . . .)

26

aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]"[22]  In Pub. Access Shoreline Haw. v. Haw. Cnty Planning Comm'n (PASH), this court identified the "necessary inquiry" to determine whether a court may review an agency appeal under HRS § 91-14(a):  (1) there must have been a contested case hearing; (2) "the agency's action must represent a final decision and order, or a preliminary ruling such that deferral of review would deprive the claimant of adequate relief;" (3) "the claimant must have followed the applicable agency rules and, therefore, have been involved in the contested case;" and (4) "the claimant's legal interests must have been injured" such that the claimant has "standing to appeal."  79

(. . . continued)

and such persons and agencies that may have an interest in the subject matter of the time and place of the hearing.

(c)  The county planning commission may, under such protective restrictions as may be deemed necessary, permit

the desired use, but only when the use would promote the effectiveness and objectives of this chapter; provided that a use proposed for designated important agricultural lands shall not conflict with any part of this chapter.  A decision in favor of the applicant shall require a majority vote of the total membership of the county planning commission.

[22]  Hualalai is a "person," as used in "person aggrieved," because it is an association or organization as defined by HRS § 91-1.

Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) (internal quotation marks omitted). "In other words, there are four requirements for judicial review over an agency appeal:  a contested case hearing, finality, compliance with agency rule, and standing." In re Maui Elec. Co., Ltd. (MECO), 141 Hawai'i 249, 258, 408 P.3d 1, 10 (2017).  This court may exercise judicial review of this appeal pursuant to HRS §§ 205-19 and 91-14 because Hualalai is aggrieved by a final decision in a contested case in which it has participated and followed agency rules, and has established standing.

### a. The proceeding for Special Permit Application No. SPP-16-188 was a "contested case."

The first requirement for judicial review under HRS § 91-14 is that the appeal be from a contested case proceeding. PASH, 79 Hawai'i at 431, 903 P.2d at 1252.  A "contested case" is "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."  HRS § 91-1.  For an agency hearing to be "required by law" it must be required by agency rule, statute, or constitutional due process.  See MECO, 141 Hawai'i at 258, 408 P.3d at 10.  This court has found that "a public hearing, conducted pursuant to published notice, was a 'contested case' within the meaning of HRS [§] 91-1."  In re Haw. Elec. Co., 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975)

28

(citing <u>E. Diamond Head Ass'n v. Zoning Bd. of Appeals</u>, 52 Haw. 518, 524 479 P.2d 796, 799 (1971)).  A case in which no formal contested case hearing is held can be considered a "contested case" within the meaning of chapter 91.  In <u>Kilakila 'O Haleakalā v. Bd. of Land & Nat. Res.</u>, where administrative rules required a hearing by law but no contested case hearing was actually held, this court considered "whether a formal hearing <u>would have</u> determined--or whether the <u>proceedings that did take place</u> determined--the 'rights, duties, or privileges of specific parties.'"  131 Hawai'i 193, 202, 317 P.3d 27, 36 (2013) (emphasis added) (finding a contested case where the proceedings that took place determined the agency's rights, duties, and privileges, even though a formal hearing was never held).  Thus, absence of a formal contested case hearing does not preclude a finding that the proceeding was a contested case.

The proceeding for Special Permit Application No. SPP-16-188 was a contested case because an agency hearing was required by the LPC rules and statutes relevant to the issuance of special permits, LPC Rule 4, 6; HRS §§ 91-9, 205-6 (referenced by HCC § 25-2-61(c)), and such a hearing would have determined the "legal rights, duties, or privileges of specific parties[,]" HRS § 91-1.  Bolton submitted Special Permit Application No. SPP-16-188 pursuant to LPC Rule 6, which requires that the LPC hold a public hearing as part of the

29

special permit application process.  LPC Rule 6-6(a) ("Upon acceptance of a Special Permit application, the Commission, through the Department, shall fix a date for the public hearing.").  Hualalai submitted its petition to intervene pursuant to LPC Rule 4-6, which requires a hearing upon receipt of such petitions.[23]  LPC Rule 4-6(b) ("Upon receipt of a written request to intervene, the Commission, at the first meeting on the matter, shall hold a hearing on the written request.").  Neither LPC Rule 4 nor Rule 6 grant the LPC discretion to decide whether or not to hold a hearing; a hearing is mandatory under both Rules.  HRS § 91-9 also mandates that "in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice."[24]  HRS § 91-9(a) (emphasis added).

---

[23]    The LPC also expressly referenced LPC Rule 4 when it gave public notice of the hearing on Special Permit Application No. SPP-16-188.  The LPC's public agenda for the hearing on Special Permit Application No. SPP-16-188 stated:

> Pursuant to Rule 4, Contested Case Procedure, of the County of Hawaiʻi Planning Commission Rules of Practice and Procedure, any person seeking to intervene as a party to a contested case hearing on the above Agenda Items Nos. 1 through 4 is required to file a written request which must be received in the office of the Planning Department no later than seven (7) calendar days prior to the Planning Commission's first public meeting on the matter.  Such written request shall be in conformity with Rule 4, in a form as provided by the Planning Department entitled "Petition for Standing in a Contested Case Hearing."

[24]    Additionally, HRS § 205-6, which governs the Land Use Commission and establishes criteria related to special permits, uses mandatory language in reference to scheduling and conducting special permit hearings, stating that the Land Use Commission "shall establish by rule or regulation, the time within which the hearing and action on petition for special permit shall

(continued . . .)

The proceedings following Bolton's submission of Special Permit Application No. SPP-16-188 constituted a contested case within the meaning of HRS § 91-14(a) and PASH because, although no agency hearing occurred, a hearing was required by LPC Rules 4 and 6 and HRS § 91-9 to determine Bolton's and Hualalai's respective legal rights and duties.

> **b.  The Planning Director's withdrawal of Special Permit Application No. SPP-16-188 constituted a "final decision."**

The second requirement for judicial review under HRS § 91-14 is that the appeal is from a final decision made by the agency.  PASH, 79 Hawai'i at 431, 903 P.2d at 1252.  A final decision or order is one that "end[s] the proceedings, leaving nothing further to be accomplished."  Gealon v. Keala, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979).  Such a decision can take the form of an agency's formal denial of a party's request for a contested case hearing, see, e.g., Kaleikini v. Thielen, 124 Hawai'i 1, 26, 237 P.3d 1067, 1092 (2010), or an agency's denial of a party's request to intervene in a contested case, see, e.g., PASH, 79 Hawai'i at 433–34, 903 P.2d at 1254–55.  An agency's failure to deny or grant a party's request for a

---

(. . . continued)

occur[,]" and "shall notify the land use commission and such persons and agencies that may have an interest in the subject matter of the time and place of the hearing."  § 205-6(b).

contested case hearing followed by agency action that effectively ends the proceeding may also constitute a final decision.  See, e.g., Kilakila, 131 Hawai'i at 202-03, 317 P.3d at 36-37.

The LPC rendered a final decision when it ended the contested case proceeding without first disposing of Hualalai's petition to intervene.  When a party submits a petition to intervene, LPC Rule 4-6(b) states, "The Commission will grant or deny such written request prior to any further action on the matter."  (emphasis added).  Appellees failed to follow this rule and as a consequence Hualalai did not receive a grant or denial of its petition to intervene.  This court has not yet considered a HRS § 91-14 appeal arising from an agency's failure to deny or grant a party's request to intervene.  However, the facts of Kilakila and PASH compel the conclusion that an agency's failure to act on a party's formal petition to intervene constitutes a final decision within the meaning of HRS § 91-14(a).

A person may satisfy HRS § 91-14(a)'s "final decision" requirement and appeal an agency's decision, even if the agency neither granted nor denied their request for a contested case hearing.  For example, in Kilakila, this court reviewed the Board of Land and Natural Resources ("BLNR")'s decision to grant a permit for the construction of a telescope on the summit of

Haleakalā without granting or denying Kilakila 'O Haleakalā ("KOH")'s formal request for a contested case hearing. 131 Hawai'i at 195-96, 317 P.3d at 29-30. The circuit court and ICA dismissed the appeal for lack of jurisdiction because a contested case hearing was not held. Id. at 196, 317 P.3d at 30. This court, however, held that "the absence of a formal denial is not dispositive of the issue[,]" and found that "failure to either grant or deny KOH's requests for a contested case hearing became an effective denial when BLNR proceeded to render a final decision by voting to grant the permit[.]" Id. at 203, 317 P.3d at 37 (emphasis added).

A person may satisfy HRS § 91-14(a)'s "final decision" requirement and appeal an agency's decision, even if their request to intervene was denied by the agency. For example, in PASH, this court reviewed the Hawai'i County Planning Commission ("HCPC")'s decision to grant a permit for the construction of a resort complex on the Big Island. 79 Hawai'i at 429-30, 903 P.2d at 1250-51. PASH, a "public interest membership organization," submitted a request to the HCPC to participate in the proceeding and to implement contested case procedures. Id. at 429, 433, 903 P.2d at 1250, 1254. The HCPC denied PASH's request on the basis that PASH did not have standing. Id. at 429, 903 P.2d at 1250. Though PASH's request to intervene in the permit proceeding was denied, the circuit court properly exercised

33

judicial review of PASH's appeal under HRS § 91-14(a), and affirmed the ICA's decision affirming the circuit court's order remanding to the HCPC to hold a contested case hearing in which PASH would be allowed to participate. Id. at 433, 903 P.2d at 1254.

In both Kilakila and PASH, this court found there was a final decision within the meaning of HRS § 91-14(a), despite lack of party status before the agency by PASH (whose request to intervene was denied) and KOH (who received no ruling on its request for a contested case hearing). Thus, in the present case, where the LPC failed to rule on Hualalai's petition to intervene and the Planning Director withdrew Special Permit Application No. SPP-16-188--action that effectively ended the contested case proceeding--it follows that there was a "final decision" by the LPC within the meaning of HRS § 91-14(a).

Appellees' contend there was "non-action" in this case and that there was no final decision because "the hearing . . . never happened." However, Appellees concede that they "elected to let [Special Permit Application No. SPP-16-188] lie as a closed matter." "Electing" to let a proceeding "lie as a closed matter" is reviewable agency action given that it had the consequence of effectively ending the proceeding for Special Permit Application No. SPP-16-188. Appellees also argue that the LPC took no "affirmative action" that "stripp[ed]" any

34

aggrieved party of its rights because "the determinative action on SP 16-188 was taken by [Bolton], not the agency."  However, the record--specifically, the Planning Director's September 21, 2016 letter to Bolton--indicates that Appellees, not Bolton, initiated the withdrawal of Special Permit Application No. SPP-16-188.  Additionally, the Planning Director's August 23, 2016 letter to Bolton stated that a site inspection was "necessary in order for us to make a final determination on the parameters of [Bolton's] Special Permit application."[25]  The Planning Director thus acknowledges that his actions constituted a "final determination" on Special Permit Application No. SPP-16-188. Even if Bolton, and not the Planning Director, had initiated the withdrawal process, the LPC still would have "elected" to let the proceeding for Special Permit Application No. SPP-16-188 "lie as a closed matter," an action that constitutes a final decision.

The LPC's failure to deny or grant Hualalai's petition to intervene in the contested case and the Planning Director's termination of the proceedings by withdrawing Special Permit Application No. SPP-16-188 constituted a final decision within the meaning of HRS § 91-14(a) and PASH.

---

[25]    A site inspection occurred pursuant to the Planning Director's August 23, 2016 letter.

### c. Hualalai followed LPC rules and participated in the contested case.

The third requirement for judicial review under HRS § 91-14 is that the claimant follow agency rules and be involved in the contested case. PASH, 79 Hawai'i at 431, 903 P.2d at 1252. This court has clarified that "[a]lthough an aggrieved person must have participated in a contested case in order to invoke judicial intervention," standing to appeal an agency decision is not "conditioned . . . upon formal intervention in the agency proceeding." In re Haw. Elec. Light Co. (HELCO), 145 Hawai'i 1, 22, 445 P.3d 673, 694 (2019) (internal quotation marks omitted) (quoting Mahuiki v. Planning Comm'n of Kaua'i, 65 Haw. 506, 515, 654 P.2d 874, 880 (1982). In other words, "adversary participation need not be confined to formal proceedings before the agency." In re Haw. Elec. Co., 56 Haw. at 264, 535 P.2d at 1105.

Hualalai followed LPC Rule 4-6(a) and participated in the proceeding by submitting a petition to intervene and paying the requisite filing fee. Hualalai also participated before the LPC through oral testimony from residents of the subdivisions whose community associations comprise Hualalai, an attorney representing Hualalai, and the president of Hualalai. The LPC's failure to grant Hualalai's petition to intervene does not preclude this court from finding that Hualalai clearly

participated and followed LPC Rules in the contested case proceeding for Special Permit Application No. SPP-16-188, as required by PASH for judicial review pursuant to HRS § 91-14(a).

### d.     Hualalai has established standing.

The final requirement for judicial review under HRS § 91-14 is that the claimant show its legal interests were injured such that it has standing to appeal.  PASH, 79 Hawai'i at 431, 903 P.2d at 1252; see also HELCO, 145 Hawai'i at 21, 445 P.3d at 693 (the claimant must be "specially, personally, and adversely affected" by the final decision).  This court "evaluate[s] standing using the 'injury in fact' test requiring: (1) an actual or threatened injury, which, (2) is traceable to the challenged action, and (3) is likely to be remedied by favorable judicial action."  Kilakila, 131 Hawai'i at 204, 317 P.3d at 38 (internal quotation marks omitted).  As we have noted, however, "where the interests at stake are in the realm of environmental concerns[,] we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements."  Id. at 204-05, 317 P.3d at 38-39 (internal quotation marks omitted) (quoting Citizens for the Prot. of the N. Kohala Coastline v. County of Hawai'i, 91 Hawai'i 94, 100-01, 979 P.2d 1120, 1126-27 (1999)).

Hualalai alleges an injury in fact to the property and environmental and aesthetic interests of area property owners who claim that Bolton's development negatively affects their properties through noise, dust, negative aesthetic effects, diminished property values, and increased traffic. These claims amount to a legally cognizable injury. Our decision in Life of the Land, Inc. v. Land Use Comm'n, 61 Haw. 3, 594 P.2d 1079 (1979), is instructive. In Life of the Land, an environmental nonprofit appealed the Land Use Commission's reclassification of property from agricultural to urban. Id. at 4, 594 P.2d at 1080. To show that it was personally and adversely affected by the Commission's reclassification, and, thus, had standing under HRS § 91-14, the nonprofit submitted statements from its members who were residents in the vicinity of the reclassified lands, who used the lands for recreational activities such as swimming, hiking, and camping, as well as for "aesthetic, conservational, occupational, professional and academic pursuits[.]" Id. at 8, 594 P.2d at 1082. The nonprofit contended that "future urbanization w[ould] destroy beaches and open space now enjoyed by" these residents such that "pursuits presently enjoyed [would] be irrevocably lost[,]" and that development of the land would "have an adverse effect on its members and on the environment." Id. This court found this to be a legally cognizable injury sufficient to establish the nonprofit's

standing under HRS § 91-14, recognizing "the importance of aesthetic and environmental interests" where a claimant's interests are "'personal' and 'special', or where a property interest is also affected." Id. In another appeal brought under HRS § 91-14, Pele Def. Fund v. Puna Geothermal Venture, residents challenged the Department of Health's decision to issue permits for geothermal wells and power plants, arguing that they were injured by "potential harm including diminished property values, deterioration of air quality, odor nuisance, and possible physical injury resulting from the permitted operations." 77 Hawai'i 64, 70, 881 P.2d 1210, 1216 (1994). This court, again, found that the residents had "clearly demonstrated" an injury in fact. Id.

Recognizing that the injuries asserted by the Hualalai landowners to their property, environmental, and aesthetic interests in the present case are comparable to those recognized by this court in Life of the Land and Pele Def. Fund, we hold that Hualalai has alleged a legally cognizable injury.

Hualalai has also satisfied the causation and redressability prongs of standing, as required by PASH and HRS § 91-14(a). Hualalai's alleged injury is traceable to the challenged action: Hualalai alleges that by failing to follow the contested case procedure set forth in the LPC Rules, Appellees have improperly enabled development by Bolton that

resulted in the property, environmental, and aesthetic injuries Hualalai identified in its petition to intervene. And finally, Hualalai's injury is likely to be remedied by the favorable judicial action it seeks: a hearing before the LPC.[26] In light of this court's lenient threshold for standing in cases that are "in the realm of environmental concerns," Kilakila, 131 Hawai'i at 204, 317 P.3d at 38, Hualalai has shown that it has standing, as required by PASH for judicial review pursuant to HRS § 91-14(a).

Accordingly, pursuant to the requirements for judicial review of agency decisions under HRS § 91-14(a), we hold that the proceeding for Special Permit Application No. SPP-16-188 was a contested case because a hearing--that would have determined the rights of both Bolton (as a permit applicant) and Hualalai (as an adverse party)--was required by LPC rules and statute. We also hold that Appellees' failure to act on Hualalai's petition followed by its withdrawal of Bolton's application constituted a final decision within the meaning of HRS § 91-14(a). We also hold that Hualalai participated and followed LPC

---

[26] Appellees repeatedly contend that the court cannot fashion a remedy for Hualalai because Hualalai "got exactly what it wanted" as Special Permit Application No. SPP-16-188 was never approved. While it is true that Hualalai initially sought the denial of Special Permit Application No. SPP-16-188, Hualalai, in substance, objects to Bolton's actions and contends that Bolton exceeded the scope of the grading and stockpiling permits that it had previously been issued. Moreover, Appellees' withdrawal of the application had the same practical effect as if Special Permit Application No. SPP-16-188 were granted.

40

Rules in the proceeding for Special Permit Application No. SPP-16-188 and has standing to allege its legally cognizable property, environmental, and aesthetic injuries. Therefore, pursuant to HRS §§ 205-19 and 91-14, and PASH, 79 Hawai'i at 431, 903 P.2d at 1252, this court may exercise judicial review of Hualalai's appeal.

## B.    Appellees' Decisions were Made Upon Unlawful Procedure and Constituted Abuses of Discretion

Under HRS § 91-14(g), upon reviewing the record, this court may "remand the case with instructions for further proceedings . . . if the substantial rights of the petitioner[] may have been prejudiced because the administrative findings, conclusions, decisions, or orders are: . . . [m]ade upon unlawful procedure; . . . or [a]rbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion."  HRS § 91-14(g)(3), (6).

The Planning Director's decision to withdraw Special Permit Application No. SPP-16-188 and to end the contested case proceeding without the LPC first issuing a decision on Hualalai's petition to intervene relied upon "unlawful procedure" and constituted an "abuse of discretion," which may have prejudiced Hualalai's substantial rights.

The LPC's failure to grant or deny Hualalai's petition to intervene and the Planning Director's subsequent decision to

withdraw Special Permit Application No. SPP-16-188 was based
upon unlawful procedure because, under LPC Rule 4-6's
unambiguous language, Hualalai was entitled to a ruling on its
petition to intervene before any other action was taken in the
contested case.  General principles of statutory construction
apply when interpreting administrative rules.  See Liberty
Dialysis-Haw., 130 Hawaiʻi at 103, 306 P.3d at 148.  If the
agency rule is "unambiguous, and its literal application is
neither inconsistent with the policies of the statute the rule
implements nor produces an absurd or unjust result," this court
should "enforce the rule's plain meaning."  Id.  Although "an
agency's interpretation of its own rules is generally entitled
to deference, this court does not defer to agency
interpretations that are plainly erroneous or inconsistent with
the underlying legislative purpose."  Id. (internal quotation
marks omitted).

LPC Rule 4-6(b) states, "Upon receipt of a written
request to intervene, the Commission, at the first meeting on
the matter, shall hold a hearing on the written request. . . .
The Commission will grant or deny such written request prior to
any further action on the matter."  (emphasis added).  LPC 4-
6(d) continues, "[a]fter establishing the parties to the
proceeding, the Commission may either proceed with the hearing,
or continue the matter to a more appropriate time and date."

(emphasis added).  The language of LPC Rule 4-6 is unambiguous: the LPC must issue a decision on a petition to intervene and establish the parties <u>before</u> taking further action in a contested case.  This interpretation of LPC Rule 4-6 is consistent with HRS chapter 91, which contains provisions ensuring all parties are afforded a full and fair opportunity to be heard and to develop the record throughout the proceeding; chapter 91 enumerates the rights afforded <u>parties</u> in a contested case proceeding.[27]

Once a person files a petition to intervene, LPC Rule 4-6(b) clearly requires that the LPC hold a hearing "on the first meeting on the matter" to determine whether to grant or deny that petition before it may take any further action in the

---

[27]  For example, HRS § 91-9--which governs contested cases, notice, hearings, and records--states that "in any contested case, <u>all parties</u> shall be afforded an opportunity for hearing after reasonable notice."  HRS § 91-9(a) (emphasis added).  The statute continues, "[o]pportunities shall be afforded <u>all parties</u> to present evidence and argument on <u>all issues</u> involved."  HRS § 91-9(c) (emphasis added).  HRS § 91-10(3) states, "[e]very party shall have the right to conduct such cross-examination as may be required for a <u>full and true disclosure of the facts</u>, and shall have the right to submit rebuttal evidence[.]"  (emphasis added).  An agency is prohibited from considering "matters <u>outside the record</u> . . . in making its decision."  HRS § 91-9(g) (emphasis added).  HRS § 91-13 similarly precludes an "official of an agency who renders a decision in a contested case" from "consult[ing] any person on any issue of fact <u>except upon notice and opportunity for all parties to participate</u>, save to the extent required for the disposition of ex parte matters authorized by law."  (emphasis added).

LPC Rules establish additional rights afforded to parties in a contested case proceeding.  <u>See</u> LPC Rule 4-6 (requiring a hearing on a petition to intervene and stating that "[t]he [LPC] will grant or deny such written request prior to any further action on the matter," and all requiring one "good faith" mediation between all parties); Rule 4-7 (allowing the parties to hold a conference with the presiding officer); Rule 4-12 (giving each party the right to cross-examine witnesses and present rebuttal evidence); Rule 4-13 (allowing parties to request issuance of a subpoena).

contested case. In the present case, although the original hearing on Special Permit Application No. SPP-16-188 was continued at Bolton's request, Special Permit Application No. SPP-16-188 remained a live agenda item on which the LPC received oral testimony at the LPC's May 19, 2016 meeting.[28] Under LPC Rule 4-6(b), the LPC's May 19 meeting was the "first meeting" on Special Permit Application No. SPP-16-188 and Hualalai's petition should have been resolved at that time. It was "plainly erroneous" for the LPC to disregard the procedures in LPC Rule 4-6 and continue with proceedings for Special Permit Application No. SPP-16-188 while leaving Hualalai's petition pending. Liberty Dialysis-Haw., 130 Hawai'i at 103, 306 P.3d at 148. By failing to follow LPC Rule 4-6, Appellees may have prejudiced Hualalai's substantial rights--the rights it would have had as a party to the proceeding.[29] Thus, because the LPC

---

[28] The LPC heard oral testimony from concerned members of the public, including from several individuals associated with Hualalai.

[29] See supra note 27 and accompanying text. Had Hualalai been approved by the LPC as a party, it would have been privy to the rights afforded to parties by HRS chapter 91 and LPC Rules. Moreover, HRS § 91-1 and LPC Rule 1-3(m) define "party" as any person "named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party" in any court or agency proceeding. (emphasis added). LPC Rule 4-6(b) establishes the criteria for an intervening party, which includes a person who can show "that the proposed action will cause them actual or threatened injury in fact." LPC Rule 4-6(b)(4). Here, Hualalai qualifies as a "person . . . properly seeking and entitled as of right to be admitted as a party" under HRS § 91-1 and LPC Rule 1-3(m) because it followed the proper intervention procedures set forth in LPC Rule 4-6(a) and has established it will suffer actual or threatened injury in fact, see supra section III.A.2.d, as required by LPC Rule 4-6(b)(4). Although it is not a necessary holding to

(continued . . .)

44

used unlawful procedure here, remand is appropriate under HRS § 91-14(g)(3).

Remand is also appropriate under HRS § 91-14(g)(6) because the LPC and Planning Director made decisions that were "characterized by abuse of discretion." The Planning Director abused his discretion when he withdrew Bolton's Special Permit Application No. SPP-16-188 after extensive nonpublic communication and fact-finding with only one party, Bolton, in the contested case. This court has held that such ex parte arguments in a contested case violate HRS chapter 91. In Town v. Land Use Comm'n, this court considered the Land Use Commission's approval of a landowner's petition to change his district's designation from agricultural to rural. 55 Haw. 538, 539, 524 P.2d 84, 85 (1974). Town, an adjoining landowner, had appeared at a public hearing and opposed the petition. Id., 524 P.2d at 86. Two meetings--one of which Town attended--were scheduled to render a final decision on the petition, but both meetings were deferred at the petitioner's request. Id. A third meeting was scheduled; Town did not attend the meeting, but wrote to the Commission and objected "to the taking of any testimony or further evidence from the petitioner." Id. at 540,

---

(. . . continued)

the disposition of this appeal, Hualalai qualifies as a "party" within the meaning of HRS chapter 91 and was privy to the rights enumerated therein.

45

524 P.2d at 86. At this meeting, the petitioner, despite being told he was prohibited from introducing new evidence, submitted documents for the Commission's consideration, argued in favor of his petition, and rebutted all statements made in opposition to his petition. Id. The Commission approved the petition, and Town appealed to the circuit court, which granted summary judgment in favor of the Commission. Id. We reversed the circuit court's grant of summary judgment, and held that the Commission committed "prejudicial error." Id. at 549, 524 P.2d at 92. We reasoned that Town "was not given the opportunity to present argument or rebuttal evidence of his own to counter the ex parte arguments presented by [the] petitioner," nor did he have "the opportunity to cross-examine [the] petitioner[.]" Id. at 549, 524 P.2d at 91–92. Town demonstrates a commitment to a core principle of contested case proceedings:  ensuring that all parties have a full and fair opportunity to develop the record before the agency renders a decision on the petition. See HRS §§ 91-9(a), (c), (g), 91-10(3), 91-13.[30]

---

[30]  HRS § 91-9 provides that "in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice[,]" HRS § 91-9(a), "[o]pportunities shall be afforded all parties to present evidence and argument on all issues involved[,]" HRS § 91-9(c), and "[n]o matters outside the record shall be considered by the agency in making its decision except as provided herein[,]" HRS § 91-9(g).

HRS § 91-10(3) states, "Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence."

(continued . . .)

In the present case, the Planning Director's actions--his unilateral, nonpublic communication with Bolton, without the knowledge or input of Hualalai, a party that he knew had already formally requested to intervene in the proceeding--did not facilitate a "full and true disclosure of the facts" before a final decision was rendered on Special Permit Application No. SPP-16-188, as chapter 91 requires. HRS § 91-10(3). Although the Planning Director necessarily exercises some discretion in performing his duties under the general grant of authority by the Hawai'i County Charter, the Zoning Code, and state law to "administer" and "enforce" the zoning laws, ordinances, and regulations,[31] he exceeded the boundaries of this discretion by precluding Hualalai from participating in a contested case proceeding for Special Permit Application No. SPP-16-188.

Appellees contend that the LPC did not abuse its discretion when it "elected to let [the proceeding] lie as a closed matter" because "[Bolton] voluntarily abandoned its

_____

(. . . continued)

HRS § 91-13 prohibits an "official of an agency who renders a decision in a contested case" from "consult[ing] any person on any issue of fact except upon notice and opportunity for all parties to participate."

[31] See CCH § 6-7.2(b)(5) ("The [planning] director shall . . . [a]dminister the subdivision and zoning ordinances and regulations adopted thereunder."); HCC § 25-2-1(b) ("The [planning] director shall enforce all other provisions of this chapter pertaining to land use."). The Planning Director is also responsible for "enforc[ing] . . . the use classification districts adopted by the land use commission and the restriction on use and the condition relating to agricultural districts[.]" HRS § 205-12.

pursuit of a special use permit[.]"  This mischaracterizes the facts:  the Planning Director's September 21, 2016 letter to Bolton advised, "your Special Permit application will be withdrawn from further processing[.]"  The Planning Director's September 21 letter is the first time withdrawal of Special Permit Application No. SPP-16-188 is mentioned.  Bolton did not initiate the withdrawal by "voluntarily abandon[ing]" its application; the Planning Director was the initiator.  There is no LPC Rule specifying who can withdraw a special permit application, or when a withdrawal can occur.  However, LPC Rule 4-6 sets forth a procedure that requires the LPC to "establish[]" the parties and resolve any petitions to intervene "prior to any further action" in the contested case proceeding.  Hualalai was therefore entitled to a decision on its petition before Appellees took any further action--such as withdrawing the application--in the proceeding.  LPC Rule 4-6 unambiguously states that the LPC "will grant or deny [a] written request [to intervene] prior to any further action on the matter."  Thus, the LPC's failure to grant or deny Hualalai's petition was arbitrary and capricious, and constituted an abuse of discretion.

## IV.  CONCLUSION

Appellees' aforementioned actions in this case--the Planning Director's extensive ex parte communication with Bolton

that culminated in his decision to withdraw Special Permit Application No. SPP-16-188, and the LPC's failure to issue a decision on Hualalai's petition and its decision to treat the proceeding for Special Permit Application No. SPP-16-188 as a closed matter--were made upon unlawful procedure in violation of HRS § 91-14(g)(3) and constituted abuses of discretion in violation of HRS § 91-14(g)(3)(6).  Therefore, pursuant to HRS § 91-14(g), remand is appropriate.  Accordingly, this case is remanded to the LPC for further proceedings consistent with this opinion.

Michael J. Matsukawa
for appellant

D. Kaena Horowitz,
(Molly A. Stebbins and
Angelic M. Ho on the briefs)
for appellees

J. Porter DeVries
for applicant Bolton, Inc.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

